IN THE UTAH COURT OF APPEALS

----ooOoo----

| | | |
|---|---|---|
| State of Utah, | ) | OPINION |
| | ) | |
| Plaintiff and Appellee, | ) | Case No. 20080857-CA |
| | ) | |
| v. | ) | F I L E D |
| | ) | (January 6, 2012) |
| Echo J. Nielsen, | ) | |
| | ) | 2012 UT App 2 |
| Defendant and Appellant. | ) | |

-----

Third District, West Jordan Department, 071400721
The Honorable Mark S. Kouris

Attorneys:     Lori J. Seppi, Heather J. Chesnut, and Stephen W. Howard, Salt Lake
                City, for Appellant
                Mark L. Shurtleff and Jeanne B. Inouye, Salt Lake City, for Appellee

-----

Before Judges McHugh, Orme, and Thorne.

THORNE, Judge:

¶1     Defendant Echo J. Nielsen was charged with child abuse homicide, a third
degree felony, *see* Utah Code Ann. § 76-5-208 (2003), and reckless endangerment, a class
A misdemeanor, *see id.* § 76-5-112.  Nielsen seeks interlocutory review of the district
court's denial of her motion to quash the bindover on those charges.  We affirm.

BACKGROUND

¶2 The background in this case is the same as in the companion case of *State v. Merrill*, 2011 UT App 3, ¶¶ 2-5, issued concurrently with this opinion. In addition to the background in the companion case, we include the following information relevant to Nielsen's 404(b) argument.

¶3 Before the preliminary hearing, the State submitted a rule 404(b) motion to admit evidence of the previous co-sleeping death of Nielsen and Merrill's infant daughter caused by asphyxiation by overlay. At a motion hearing, the magistrate and the attorneys discussed whether the State's 404(b) motion was an issue for the district court or the magistrate in a preliminary hearing. The magistrate determined that he could make a 404(b) determination for the purpose of the preliminary hearing, acknowledging that the determination would not be binding at trial in the district court. After considering the parties' arguments, the magistrate ruled that for purposes of the preliminary hearing he would allow evidence of the previous infant's death if the State demonstrated at that hearing a proper noncharacter purpose for the admission of the circumstances surrounding that death. The magistrate determined that because there is no jury at the preliminary hearing stage the probative value of the evidence outweighed the danger of unfair prejudice.

¶4 At the preliminary hearing, Dr. Edward A. Leis testified regarding the cause and manner of the second infant's death. During his testimony, Dr. Leis stated that he listed the infant's co-sleeping in the same bed with his parents as a sub-diagnosis and mentioned that a sibling had been found dead while co-sleeping with the parents previously. Nielsen's defense attorney objected, arguing that the State had not established a non-character purpose for introducing that evidence. The State responded that the evidence of the first co-sleeping death was being offered to prove the mens rea element of the charges. The State argued that the death of the first infant was an opportunity for the defendants to learn about the risks of co-sleeping with an infant and such evidence was relevant to determine whether the defendants were or ought to have been aware of the risk. Nielsen's defense attorney argued several of the *Shickles* factors, asserting that the circumstances between the deaths were different, that there was a three year interval of time between the deaths, and pointing out that a previous infant's death is highly charged emotional evidence that may induce a jury to reach a verdict based on non-legal factors.

¶5   The magistrate ruled that the evidence of the sibling's co-sleeping death was admissible, and ultimately bound Nielsen and Merrill over for trial on both charges. Both Nielsen and Merrill asked the district court to quash their bindovers, arguing insufficiency of the evidence. In addition, Merrill raised other constitutional issues. The district court conducted oral arguments on the defendants' motions to quash. The court determined that the State had met its low burden at the preliminary hearing and denied the defendants' motions to quash. Nielsen now appeals.

## ISSUES AND STANDARD OF REVIEW

¶6   Nielsen first challenges the district court's denial of her motion to quash the bindover arguing, that the State did not present evidence sufficient to establish probable cause to believe that she committed the charged crimes. Significantly, Nielsen also argues that the magistrate erred by considering prior bad act evidence in violation of rule 404(b) of the Utah Rules of Evidence. "[A] trial court's decision to admit evidence under rule 404(b) . . . [is reviewed for] an abuse of discretion . . . ." *State v. Burke*, 2011 UT App 168, ¶ 17, 256 P.3d 1102 (alterations and omissions in original) (internal quotation marks omitted), *cert. denied*, 263 P.3d 390 (Utah 2011).

## ANALYSIS

¶7   Nielsen argues evidentiary issues raised and rejected in the companion case, *see State v. Merrill*, 2011 UT App 3.[1] For the reasons cited in the companion case, we reject

---

[1]Nielsen raises fundamentally identical evidentiary claims as Merrill, but omits the violation of equal protection and due process claims that Merrill raises on appeal. In addition to Merrill's evidentiary claims, Nielsen argues that "[i]f a hazardous condition arose, it arose after Merrill came to bed and moved [the infant] from the position [Nielsen] placed [him] in." The entirety of Nielsen's argument is contained in three sentences. She does not provide any supporting authority or analysis. Nor does she address the State's argument that the decision to co-sleep, and allow Merrill to co-sleep with the infant is sufficient to create liability irrespective of whether her physical

(continued...)

Nielsen's evidentiary claims and do not consider them anew in this decision. In addition, Nielsen also asserts that this court should reverse the district court's decision denying her motion to quash the bindover because the magistrate erred by considering inadmissible evidence. Nielsen argues that evidence of the previous death of her infant daughter was inadmissible under rule 404(b) of the Utah Rules of Evidence because it is not relevant for a proper noncharacter purpose and because it is extremely prejudicial.

¶8    Utah Rule of Evidence 404(b) provides, as follows,

> Evidence of other crimes, wrongs or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident, provided that upon request by the accused, the prosecution in a criminal case shall provide reasonable notice in advance of trial, or during trial if the court excuses pretrial notice on good cause shown, of the nature of any such evidence it intends to introduce at trial.

Utah R. Evid. 404(b). This list is not exhaustive and "evidence demonstrating other purposes is not precluded so long as the evidence is offered for a legitimate purpose other than to show the defendant's propensity to commit the crime charged." *State v. Allen*, 2005 UT 11, ¶ 17, 108 P.3d 730.

¶9    A three-part test determines whether evidence is admissible under rule 404(b). *See Burke*, 2011 UT App 168, ¶ 27. "First, we must determine whether the evidence is admissible for a proper, noncharacter purpose under rule 404(b)." *Id.* Second, we consider whether the evidence is relevant under rules 401 and 402. "Evidence is

---

[1](...continued)
acts resulted in the infant's death. "Briefs must contain reasoned analysis based upon relevant legal authority. An issue is inadequately briefed when the overall analysis of the issue is so lacking as to shift the burden of research and argument to the reviewing court." *Brussow v. Webster*, 2011 UT App 193, ¶ 10, 258 P.3d 615 (internal quotation marks omitted), *cert. denied*, No. 20110715 (Utah Nov. 28, 2011); *see also* Utah R. App. P. 24. Because this issue is inadequately briefed we do not consider it.

relevant if it tends to prove some fact that is material to the crime charged[,] other than the defendant's propensity to commit crime." *Id.* ¶ 33 (alteration in original) (citations omitted). And finally, "we must decide whether the probative value of the evidence is substantially outweighed by the danger of unfair prejudice under rule 403." *Id.* ¶ 34 (citations omitted). We examine each of these criteria in turn.

## I. Proper, Noncharacter Purpose

¶10    Nielsen asserts that the evidence of the prior infant's death was not admitted for a proper, noncharacter purpose. Specifically, Nielsen argues in her brief that because she "did not claim [that the infant's] death [in the instant case] was the result of mistake or accident,"[2] evidence of the previous death by co-sleeping was not admissible to demonstrate that she was aware of or ought to have had knowledge about the risk factors associated with co-sleeping. The State claims that evidence of the prior infant's death is relevant to a determination of whether Nielsen acted either with criminal negligence or recklessness, two of the culpable mental states sufficient to prove the charged crimes. *See* Utah Code Ann. § 76-5-208 (2003) (providing that criminal homicide constitutes child abuse homicide if the individual who committed child abuse acted with *criminal negligence*, which necessitates proof that the individual so acting *ought to be aware of a substantial and unjustifiable risk* that the circumstances exist or the result will occur); *see also id.* § 76-5-112 (providing that a person engages in conduct *recklessly* when she is *aware of but consciously disregards a substantial and unjustifiable risk* that the circumstances exist or the result will occur). The State argues that the evidence is admissible to show that Nielsen had knowledge of the risks related to co-sleeping with the infant. The State also argues that the evidence is admissible to show that the risk to the second infant was substantial and unjustifiable.

¶11    Rule 404(b) allows prior bad act evidence in a criminal trial "where it is offered to show *any element of the alleged crime*. Prior bad act evidence is only excluded where the *sole* reason it is being offered is to prove bad character or to show that a person acted in conformity with that character." *State v. O'Neil*, 848 P.2d 694, 700 (Utah Ct. App. 1993)

---

[2]In her brief, Nielsen further explains that "she did not claim [the infant's] death was the result of mistake or accident," but instead that "she acknowledged that she had some knowledge about the risk factors associated with co-sleeping, but argued any risk she took by co-sleeping with [the infant] did not rise to the level of criminal negligence and did not cause [the infant's] death."

(first emphasis added); *see also State v. Doporto*, 935 P.2d 484, 490 n.4 (Utah 1997) (noting that the categories of 404(b) are not exclusive and "[p]rior crime evidence may be used if specially relevant to any material element of the crime charged").

¶12 Here, the State is offering the evidence to show (1) Nielsen's knowledge about the risk and (2) the degree of that risk to the infant, two of the essential elements of both the child abuse homicide and reckless endangerment charges. First, offering evidence to prove knowledge is a proper, noncharacter purpose. *See* Utah R. Evid. 404(b); *see also State v. Kooyman*, 2005 UT App 222, ¶ 24, 112 P.3d 1252 (finding knowledge to be a proper noncharacter purpose and citing *State v. Ramirez*, 924 P.2d 366, 369 (Utah Ct. App. 1996), for its discussion about knowledge as an appropriate noncharacter reason to admit prior bad act evidence). Thus, we determine that the evidence may be admissible to show Nielsen's knowledge of the risk.

¶13 Second, prior bad act evidence "may be used if specially relevant to any material element of the crime charged." *Doporto*, 935 P.2d at 490 n.4. In the instant case, the State offered the previous infant's death to demonstrate both knowledge and the nature and degree of the risk. Nielsen's knowledge of the risk and the nature and degree of the risk are statutorily required elements of both the child abuse homicide and reckless endangerment charges. *See* Utah Code Ann. § 76-5-208 (child abuse homicide); *id.* § 76-5-112 (reckless endangerment). As a result, we determine this evidence may also be admissible to demonstrate the statutorily required elements for which the State offered the evidence. We therefore conclude that the death of the previous infant might properly be admitted into evidence for a proper, noncharacter purpose under rule 404(b) to demonstrate both Nielsen's knowledge of the risk as well as the degree of risk to the second infant.

II. Relevance Under Rules 401 and 402

¶14 We next determine whether the evidence of the previous co-sleeping death is relevant. Only relevant evidence, as defined in rule 401, is admissible under rule 402 of the Utah Rules of Evidence. *See* Utah R. Evid. 402.

> "'Relevant' evidence means evidence having any tendency
> to make the existence of any fact that is of consequence to
> the determination of the action more probable or less
> probable than it would be without the evidence." [Utah R.

> Evid.] 401.  Thus, "[e]vidence is relevant if it tends to prove
> some fact that is material to the crime charged[,] other than
> the defendant's propensity to commit crime."  *State v.
> Balfour*, 2008 UT App 410, ¶ 24, 198 P.3d 471.

*State v. Burke*, 2011 UT App 168, ¶ 33, 256 P.3d 1102 (alterations in original), *cert. denied*, 263 P.3d 390 (Utah 2011).  Our analysis of the second part of the 404(b) test necessarily includes an overview of the elements of child abuse homicide and reckless endangerment, the crimes at issue in this case.  The child abuse homicide statute provides that a person commits child abuse homicide "if she inflicts serious physical injury on a child . . . . [intentionally, knowingly,] recklessly[, or *with criminal negligence*] and the injury result in the child's death . . . ."  *State v. Killpack*, 2008 UT 49, ¶ 24, 191 P.3d 17; *see also* Utah Code Ann. §§ 76-5-208, 76-5-201; *id.* § 76-5-109(2)(b) (Supp. 2006).  A person engages in conduct with

> criminal negligence or is criminally negligent with respect to
> circumstances surrounding [her] conduct or the result of
> [her] conduct when *[she] ought to be aware of a substantial and
> unjustifiable risk* that the circumstances exist or the result will
> occur.  The risk must be of a nature and degree that the
> failure to perceive it constitutes a gross deviation from the
> standard of care that an ordinary person would exercise in
> all the circumstances as viewed from the actor's standpoint.

Utah Code Ann. § 76-2-103(4) (2003) (emphasis added).  Similarly, a person commits the offense of reckless endangerment if "under circumstances not amounting to a felony offense, the person *recklessly* engages in conduct that creates a substantial risk of death or bodily injury to another person."  *Id.* § 76-5-112(1) (emphasis added).  A person engages in conduct recklessly

> when *[she] is aware of but consciously disregards a substantial
> and unjustifiable risk* that the circumstances exist or the result
> will occur.  The risk must be of such a nature and degree that
> its disregard constitutes a gross deviation from the standard
> of care that an ordinary person would exercise under all the
> circumstances as viewed from the actor's standpoint.

*Id.* § 76-2-103(3) (emphasis added).

¶15 Nielsen asserts that because evidence of the previous death was not relevant, the only reason to seek admission of that evidence was to encourage the magistrate to find probable cause notwithstanding the lack of causation evidence, because the previous co-sleeping death suggests that Nielsen might have a propensity toward unsafe co-sleeping. The State argues that evidence related to the previous infant's death demonstrates that Nielsen knew at the time she decided to co-sleep, and allow Merrill to co-sleep, with their infant son that she and Merrill were heavy sleepers that had not been awakened until after they had previously accidentally caused the death of an infant daughter by co-sleeping. The State argues that this evidence makes it more likely that Nielsen acted with the *knowledge* that co-sleeping with her infant son, and allowing Merrill to do so as well, put the infant son at risk. We agree with the State that evidence of Nielsen's knowledge is thus relevant.

### III. Probative Nature of Evidence Versus Prejudicial Effect Under Rule 403

¶16 Lastly, we must determine whether the probative value of the evidence is substantially outweighed by the danger of unfair prejudice under rule 403 of the Utah Rules of Evidence according to the factors, originally enumerated in *State v. Shickles*, 760 P.2d 291 (Utah 1988).[3] *See* Utah R. Evid. 403. "Rule 403 does not require a trial court to

---

[3]We observe that the magistrate did not expressly engage in the scrupulous examination of the evidence by identifying each of the *Shickles* factors. The magistrate did, however, make a sufficient inquiry under rule 403 of the evidence both at the hearing considering the State's motion to admit evidence pursuant to rule 404(b) and during the preliminary hearing. *See generally State v. Ferguson*, 2011 UT App 77, ¶ 16, 250 P.3d 89 ("While [t]he court need not identify each of the *Shickles* factors in its analysis, we must be able to discern that it made a sufficient inquiry under rule 403." (alteration in original) (internal quotation marks omitted)), *cert. denied*, 263 P.3d 1187 (Utah 2011). The parties presented arguments at various times at each of those hearings pertaining to the three-part test, including the *Shickles* factors to be applied to determine whether evidence is admissible under rule 404(b). After such arguments, the magistrate ruled to admit the evidence. Because Nielsen neither objected to nor challenges whether the magistrate scrupulously examined the evidence, and the State proceeded to show that the testimony was offered for the proper, noncharacter purpose of

(continued...)

dismiss all prejudicial evidence because [a]ll effective evidence is prejudicial in the sense of being damaging to the party against whom it is offered." *State v. Marchet*, 2009 UT App 262, ¶ 44, 219 P.3d 75 (alteration in original) (internal quotation marks omitted). To determine whether the evidence's probative value is substantially outweighed by the prejudicial effect, the district court must consider the *Shickles* factors:

> [1] the strength of the evidence as to the commission of the other crime, [2] the similarities between the crimes, [3] the interval of time that has elapsed between the crimes, [4] the need for the evidence, [5] the efficacy of alternative proof, and [6] the degree to which the evidence probably will rouse the jury to overmastering hostility.

*Shickles*, 760 P.2d at 295-96.

¶17    Considering the first factor, the strength of the evidence involving the previous infant's co-sleeping death is reasonably strong. Dr. Leis, the deputy chief medical examiner, performed the autopsy of the first infant.[4] Dr. Leis, in his report of examination of the first infant, determined that her accidental death was caused by positional asphyxiation by overlay due to co-sleeping in her parents' bed.

¶18    Applying the second factor, the similarities between the two incidents are that both infants, given each of their ages, would have been incapable of rolling over, and

---

[3](...continued)
knowledge, we conclude that the magistrate engaged in a sufficiently scrupulous examination of the evidence. *See generally State v. Holbert*, 2002 UT App 426, ¶ 38 n.6, 61 P.3d 291 (discussing the scrupulous examination requirement).

[4]The certification of the cause of death in circumstances such as in the first infant's death, wherein it appears that the infant's death was "due to sudden infant death syndrome," may only be made by the medical examiner or his designated representative. *See* Utah Code Ann. §§ 26-4-10, 26-4-7 (1998). "'Medical examiner' means the state medical examiner appointed pursuant to Section 26-4-4 or a deputy appointed by the medical examiner." *Id.* § 26-4-2(2) (Supp. 2006).

were allegedly each put to sleep on their back between Merrill and Nielsen.[5] When the parents awoke in each instance, the infant's position had changed from the infant's back and each infant was found unresponsive in the face-down position.

¶19 Reviewing the third factor, the interval of time between the two incidents is sufficiently proximate to be highly probative. The second infant's death occurred approximately three years after the first death. Knowledge about the circumstances of the first death would be painfully fresh. *See generally Marchet*, 2009 UT App 262, ¶ 45 (upholding the trial court's decision that a two-year time interval between incidents was sufficiently proximate to warrant admission); *see also State v. O'Neil*, 848 P.2d 694, 701 (Utah Ct. App. 1993) (considering a three-year span between the defendant's earlier conviction and the alleged crime "a short period of time").

¶20 Next we consider the fourth and fifth factors—the need for the evidence and the efficacy of alternative proof. The 404(b) evidence was necessary to establish Nielsen's

---

[5]Regarding the second infant's sleeping position the State proffered testimony of Detective Eric Anderson, Officer Michelle Chase, and Detective Alexis Van Wagoner. The State asserts that Detective Anderson would testify that

> [Merrill] said the baby was on his chest, but that [Nielsen] told the detective that she took the child to bed with her, that [Merrill] joined shortly after she took the child to the bed, . . . . That [Nielsen] was on the right side and that [Merrill] was on the left side and that [the child] was in between them, on his back. And that they had laid a blanket on top of [the child].

The State proffered testimony of Officer Chase that when she encountered Merrill in the home, he had a bloody nose and blood on his shirt and had explained that his father had given him the bloody nose, and that Officer Chase would testify that "Merrill told Officer Chase that he had the baby, . . . on his chest and that when [Merrill] woke up, that's when he realized the child wasn't breathing." The State further proffered that Detective Van Wagoner would testify that

> [s]he observe[d]—[Detective Van Wagoner] observe[d] blood on the baby's face and [Merrill] said the baby was on his chest. It's unclear from the police report whether that means that the baby was on the baby's chest or whether the baby was lying chest-to-chest or that the baby was lying with the baby's back to the father's chest. That's unclear.

20080857-CA 10

knowledge of the risk, pertinent to a determination of the likelihood that the co-sleeping was done in either a reckless or criminally negligent manner. The evidence was also required for an analysis of whether Nielsen's failure to perceive that risk constituted a gross deviation from the standard of care that an ordinary person would exercise *in all the circumstances as viewed from the actor's standpoint*. Evidence of the previous infant's death is the only evidence that would give a complete and detailed account of the circumstances preceding the second infant's death, as viewed from Nielsen's standpoint.

¶21　Sixth, regarding the degree to which the evidence probably may rouse the fact-finder to overmastering hostility, we observe that the evidence was admitted for the limited purpose of the preliminary hearing.[6] Because the evidence was admitted for the limited purpose of the preliminary hearing, which does not involve a jury, we conclude that at this stage of the proceeding the evidence does not unfairly prejudice Nielsen. We express no opinion on whether the evidence would be admissible at trial for the current offenses—an issue which is simply not before us.

¶22　We determine that each of the *Shickles* factors weigh in favor of admission of the 404(b) evidence and conclude that the district court did not abuse its discretion in refusing to quash the bindover.


CONCLUSION

¶23　The State offered the evidence of the prior infant's death for the proper, noncharacter purpose of proving knowledge. Evidence related to the previous infant's co-sleeping death is relevant because such evidence makes it more probable that Nielsen acted with the knowledge that co-sleeping with her infant son, and allowing Merrill to do so, put this infant at risk. On balance, the *Shickles* factors weigh in favor of admission of the evidence.

---

[6]The magistrate, in his oral ruling, determined that the evidence would be probative for the purposes of the preliminary hearing. The magistrate also found that the probative value outweighed the danger of unfair prejudice because the evidence was admitted for the limited purpose of the preliminary hearing and there was no jury at the preliminary hearing stage.

¶24 Additionally, Nielsen raises the same evidentiary arguments resolved in *State v. Merrill*, 2011 UT App 3, the companion case. Therefore, we resolve her evidentiary arguments in the same way and deny Nielsen's sufficiency of the evidence claims. As a result, we conclude that the district court did not abuse its discretion in refusing to quash the bindover. Affirmed.

_____

William A. Thorne Jr., Judge

-----

¶25 WE CONCUR:

_____

Carolyn B. McHugh,
Presiding Judge

_____

Gregory K. Orme, Judge