IN THE UTAH COURT OF APPEALS

----ooOoo----

| | | |
|---|---|---|
| State of Utah, | ) | OPINION |
| | ) | |
| Plaintiff and Appellee, | ) | Case No. 20100996-CA |
| | ) | |
| v. | ) | F I L E D |
| | ) | (September 27, 2012) |
| Leonel Garcia-Vargas Jr., | ) | |
| | ) | 2012 UT App 270 |
| Defendant and Appellant. | ) | |

-----

Third District, Salt Lake Department, 091908593
The Honorable Ann Boyden

Attorneys:     E. Rich Hawkes and Scott A. Wilson, Salt Lake City, for Appellant
               Mark L. Shurtleff and Jeanne B. Inouye, Salt Lake City, for Appellee

-----

Before Judges Thorne, Voros, and Christiansen.

THORNE, Judge:

¶1     Leonel Garcia-Vargas Jr. appeals his convictions of aggravated robbery, a first degree felony, *see* Utah Code Ann. § 76-6-302 (2008); robbery, a second degree felony, *see id.* § 76-6-301; and possession of burglary tools, a class B misdemeanor, *see id.* § 76-6-205.  We affirm.


BACKGROUND

¶2     Garcia-Vargas's convictions arise from an October 2009 incident wherein Garcia-Vargas and another man, identified only as Freakin' Freddy (Freddy), entered a house

and demanded money and drugs from G.T. and R.S., two individuals who lived there. According to G.T.'s trial testimony, G.T. was in his bedroom watching television when Garcia-Vargas and Freddy suddenly appeared. G.T. had never seen either of them before. Garcia-Vargas threatened him with a knife and demanded money. G.T. told the men that he did not have anything, and Garcia-Vargas began hitting him in the face, knocking him unconscious. When he regained consciousness, G.T. saw that his room had been ransacked. Garcia-Vargas and Freddy reentered the room and again demanded money. When G.T. said that he did not have any, Garcia-Vargas hit him in the face again and threatened him with the knife. Freddy, who was holding a big screwdriver, then threw a nightstand at G.T. The two intruders left, and G.T. determined that two cell phones, some gold items, and money had been taken from his room.

¶3      R.S. testified that he was watching television and folding clothes when Garcia-Vargas entered his room holding a knife and demanding money. Like G.T., R.S. had never seen Garcia-Vargas before. Garcia-Vargas punched R.S. and used a metal tool to hit R.S.'s head, body, and hand. Garcia-Vargas then called to Freddy, who came in and rummaged through things in the room. When the men could not find anything they wanted, they both started hitting R.S., and Freddy threw a dumbbell at R.S., dislocating his shoulder. Before leaving the house, the two men took a camera, two broken phones, a translator device, and some money.

¶4      Police apprehended Garcia-Vargas in a nearby parking lot shortly after the incident. When Garcia-Vargas was apprehended, he had a straightened paint can opener in his pocket, as well as a set of keys that had been modified to serve as burglary tools. He also had three cell phones with him, two of which belonged to G.T. and R.S. Police also found a backpack near the scene bearing the logo of Garcia-Vargas's former employer and containing two more cell phones, an English-Spanish translator, and various tools including a knife, three screwdrivers, and a pair of pliers.

¶5      Garcia-Vargas was charged with two counts of aggravated robbery and one count of possession of burglary tools. At trial, the State explicitly argued that Garcia-Vargas had committed the aggravated robbery offenses as a party to the offense under principles of accomplice liability. *See generally* Utah Code Ann. § 76-2-202 (2008) ("Every person, acting with the mental state required for the commission of an offense who directly commits the offense, who solicits, requests, commands, encourages, or intentionally aids another person to engage in conduct which constitutes an offense

shall be criminally liable as a party for such conduct."). The jury was also instructed on the State's accomplice liability theory.

¶6     Garcia-Vargas did not testify at his jury trial, but the State presented the version of events that he had given to police following his arrest. According to Garcia-Vargas's statement to police, he had only met Freddy the night before the incident, and the two had used methamphetamine together. The next day, Freddy told Garcia-Vargas that he knew where to get more of the drug and led Garcia-Vargas to G.T. and R.S.'s house. Garcia-Vargas and Freddy entered the house through an unlocked side door of the garage, which Garcia-Vargas assumed was by permission. Inside the garage, Garcia-Vargas saw two unattended cell phones. He took the phones and put them in his pocket, intending to steal them.

¶7     Garcia-Vargas and Freddy then went to the living quarters of the home, where Freddy "starts to immediately ransack the place and ask where the [drugs were]." Freddy hit G.T., apparently knocking him down, and told Garcia-Vargas to watch G.T. Although Garcia-Vargas said he "didn't know what to do" at this point, he did watch G.T. while Freddy ransacked the house and alerted Freddy when G.T. got up. As Garcia-Vargas was alerting Freddy, G.T. struck Garcia-Vargas in the back, and Garcia-Vargas turned and punched him in the face. Garcia-Vargas then joined Freddy downstairs and witnessed him throw a dumbbell at R.S. Garcia-Vargas also threw a cell phone at R.S., thinking that R.S. had used the phone to call the police. Garcia-Vargas then told Freddy that the police may have been called and that they should go, and the two men left the house.

¶8     Near the end of trial, Garcia-Vargas's counsel requested that the district court instruct the jury on the lesser-included offenses of robbery, theft, assault, and aggravated assault. The court agreed to instruct the jury on robbery but refused to give instructions on theft, assault, or aggravated assault. The district court reasoned that there was "not a rational basis for separating [the theft and assault offenses] into individual offenses." The jury found Garcia-Vargas guilty of robbery as to G.T., aggravated robbery as to R.S., and possession of burglary tools.

ISSUE AND STANDARD OF REVIEW

¶9     Garcia-Vargas argues that the district court erred when it denied his request for jury instructions on the crimes of theft, assault, and aggravated assault as lesser included offenses of aggravated robbery.  "A trial court's refusal to grant a lesser included offense instruction is a question of law, which we review for correctness." *State v. Powell*, 2007 UT 9, ¶ 12, 154 P.3d 788.


ANALYSIS

¶10     Garcia-Vargas argues that the evidence presented at trial entitled him to a jury instruction on the crimes of theft, assault, and aggravated assault as lesser included offenses of the aggravated robbery charges against him.  Upon a defendant's request, a lesser included offense instruction "must be given if (i) the statutory elements of greater and lesser included offenses overlap . . . and (ii) the evidence provides a rational basis for a verdict acquitting the defendant of the offense charged and convicting him of the included offense."  *State v. Spillers*, 2007 UT 13, ¶ 12, 152 P.3d 315 (omission in original) (internal quotation marks omitted); *see also State v. Baker*, 671 P.2d 152, 157–59 (Utah 1983) (adopting an "evidence-based" standard for instructing on lesser included offenses).  Garcia-Vargas argues that both prongs of the test were satisfied in this case and that the district court erred when it failed to give the requested instructions.

¶11     The State does not dispute that, under the circumstances of this case, the crimes of theft, assault, and aggravated assault were lesser included offenses to the charged aggravated robbery offenses because the elements of the offenses overlap.[1] *See generally State v. Kruger*, 2000 UT 60, ¶ 12, 6 P.3d 1116 (enumerating the three tests for an included offense, including that "'[i]t is established by proof of the same or less than all the facts required to establish the commission of the offense charged'" (quoting Utah Code Ann. § 76-1-402(3)(a) (1995))).  We therefore proceed to the second prong of the applicable test and examine whether "there is evidence to justify acquittal of the greater

---

[1]The State does not explicitly concede this point, but it does limit its arguments to the second prong of the applicable test—whether "the evidence provides a rational basis for a verdict acquitting the defendant of the offense charged and convicting him of the included offense."  *See State v. Spillers*, 2007 UT 13, ¶ 12, 152 P.3d 315.

offense and conviction of the lesser offense." *See id.* ¶ 15; *cf. Spillers*, 2007 UT 13, ¶ 12 ("Because neither party disputes the first prong of the lesser included offense test—that the statutory elements of manslaughter and murder overlap—the only issue before this court is whether there is a rational basis to acquit Defendant of murder and convict him of manslaughter.").

¶12    In this case, the charged offenses were two counts of aggravated robbery. "A person commits aggravated robbery if in the course of committing robbery, he: (a) uses or threatens to use a dangerous weapon . . . [or] (b) causes serious bodily injury upon another . . . ." Utah Code Ann. § 76-6-302(1) (2008). A person commits robbery when "the person unlawfully and intentionally takes or attempts to take personal property in the possession of another from his person, or immediate presence, against his will, by means of force or fear, and with a purpose or intent to deprive the person permanently or temporarily of the personal property," *id.* § 76-6-301(1)(a), or "the person intentionally or knowingly uses force or fear of immediate force against another in the course of committing a theft or wrongful appropriation," *id.* § 76-6-301(1)(b). An act is considered to be "in the course of committing" a robbery, theft, or wrongful appropriation if it occurs in an attempt to commit, during the commission of, or in the immediate flight after the attempt or commission of a robbery, theft, or wrongful appropriation. *See id.* §§ 76-6-301(2), -302(3).

¶13    At trial, the jury was presented with two basic versions of events. Under the victims' version, Garcia-Vargas clearly committed two acts of either robbery or aggravated robbery by attempting to take property from G.T. and R.S. by force or fear.[2] We see no support in either G.T. or R.S.'s testimony for the conclusion that Garcia-Vargas committed only theft, or only assault or aggravated assault, but not the charged robbery offenses, and Garcia-Vargas does not argue otherwise. Rather, Garcia-Vargas's arguments on appeal arise from his own version of events, which he gave to police after his arrest and which was recounted at trial by the interviewing officer.

¶14    According to Garcia-Vargas, he accompanied Freddy to the victims' house to obtain methamphetamine. He admitted to taking two cell phones from the victims' garage prior to encountering G.T. and R.S. in the living quarters of the house. When Garcia-Vargas and Freddy entered the living area, Freddy "start[ed] to immediately

---

[2]The jury was instructed on robbery as a lesser included offense of aggravated robbery and, in fact, convicted Garcia-Vargas of simple robbery against G.T.

ransack the place and ask where the [drugs were]," hitting G.T. and apparently knocking him down. Garcia-Vargas stated that, at this point, "[he] didn't know what to do when all this started, was started by Freakin' Freddy." Nevertheless, Garcia-Vargas then complied with Freddy's instruction to "watch [G.T.]" as Freddy proceeded through the house. Garcia-Vargas alerted Freddy when G.T. got up, and as he was doing so, G.T. struck him in the back. Garcia-Vargas turned and punched G.T. in the face, then joined Freddy downstairs where he witnessed Freddy throw a dumbbell at R.S. At this time, Garcia-Vargas noticed an open cell phone, which caused him to worry that the police had been called. Garcia-Vargas told Freddy about the suspected call to police, said that they needed to leave, and picked up the phone and threw it at R.S. Garcia-Vargas then fled out the back door of the house.

¶15    Garcia-Vargas argues that these statements provide a rational basis for convicting him of one or more theft or assault crimes while acquitting him of robbery or aggravated robbery. Garcia-Vargas admits that he committed theft when he took the two cell phones from the victims' garage. But as to the events that occurred once he and Freddy entered the house, Garcia-Vargas argues that his statements support the conclusion that "he truly expected a peaceful drug deal and was only reacting to Freakin' Freddy's attacks." He argues that his admitted acts of force—punching G.T. and throwing a cell phone at R.S.—were unrelated to his prior completed theft of the cell phones and were not intended to commit any new act of theft. Garcia-Vargas also argues that his statements provide a basis to find that he did not know that Freddy intended to rob the victims, and thus would support a finding that Garcia-Vargas lacked the necessary intent for accomplice liability for Freddy's actions. *See generally State v. Briggs*, 2008 UT 75, ¶ 14, 197 P.3d 628 ("An accomplice must . . . have the intent that the underlying offense be committed.").

¶16    When evaluating whether a lesser included offense instruction should be given, the district court may not weigh the credibility of the evidence but must instead determine "whether there is 'a sufficient quantum of evidence' to send [the] issue to the jury." *State v. Kruger*, 2000 UT 60, ¶ 14, 6 P.3d 1116 (quoting *State v. Baker*, 671 P.2d 152, 159 (Utah 1983)). In doing so, the district court must "view the evidence and the inferences that can be draw from it in the light most favorable to the defense." *Id.* (internal quotation marks omitted). "[W]hen the evidence is ambiguous and therefore susceptible to alternative interpretations, and one alternative would permit acquittal of the greater offense and conviction of the lesser, a jury question exists and the court must give a lesser included offense instruction at the request of the defendant." *Baker*, 671 P.2d at 159.

¶17 Despite these defense-favorable standards, we agree with the State that Garcia-Vargas's statements do not establish a basis to acquit him of the aggravated robbery charges while convicting him of the lesser crimes of theft, assault, or aggravated assault. Garcia-Vargas's statements support the inference, or at least the possibility,[3] that he did not go to the victims' house with the intent to rob them. And his statement that he "didn't know what to do" when Freddy began hitting G.T. and ransacking the house provides a basis for concluding that Garcia-Vargas had no intent to rob the victims at that point. However, once Freddy began hitting G.T. and ransacking the house,[4] Garcia-Vargas was on notice that Freddy was committing robbery, yet he actively participated and aided Freddy rather than fleeing or even remaining without participating. Absent any assertion by Garcia-Vargas that he had some mental state other than an intent to aid Freddy and to rob the victims, it is entirely speculative to assume that Garcia-Vargas did not have the intention to join Freddy in robbing the victims.[5] To the contrary, "a person is presumed to intend the natural and probable

---

[3]Garcia-Vargas's statements introduced at trial indicated only that he went to the house "for methamphetamine," leaving it ambiguous as to whether he intended to buy it or take it.

[4]In this context, Garcia-Vargas's use of the word "ransacking" indicates that he was aware that Freddy was intent on taking property from the victims. *See* Merriam-Webster.com, http://www.merriam-webster.com/dictionary/ransack (last visited Sept. 24, 2012) ("2: to search through to commit robbery: plunder").

[5]This court recently summarized the difference between reasonable inference and speculation:

> While it is sometimes subtle, there is in fact a difference
> between drawing a reasonable inference and merely
> speculating about possibilities. [A]n inference is a deduction
> as to the existence of a fact which human experience teaches
> us can reasonably and logically be drawn from proof of
> other facts. On the other hand, speculation is defined as the
> act or practice of theorizing about matters over which there
> is no certain knowledge. The difference lies in the existence
> of underlying facts supporting the conclusion. In the case of
> a reasonable inference, there is at least a foundation in the
> evidence upon which the ultimate conclusion is based; in the

(continued...)

consequences of his acts." *State v. Sisneros*, 631 P.2d 856, 859 (Utah 1981) (internal quotation marks omitted).

¶18    By Garcia-Vargas's own account, he kept watch over G.T. at Freddy's request while Freddy ransacked the house. Garcia-Vargas warned Freddy when G.T. got up, and Garcia-Vargas struck G.T. in the face during the incident. He also warned Freddy that he thought the police may have been called and threw a cell phone at R.S. The only rational conclusion supported by these statements is that Garcia-Vargas acted as, at the least, an accomplice to Freddy's robberies of G.T. and R.S. *See generally* Utah Code Ann. § 76-2-202 (2008) ("Every person, acting with the mental state required for the commission of an offense who directly commits the offense, who solicits, requests, commands, encourages, or intentionally aids another person to engage in conduct which constitutes an offense shall be criminally liable as a party for such conduct."). Thus, while the jury of course had the option of acquitting Garcia-Vargas of any or all of the charges against him, the evidence presented at trial provided no rational basis for a verdict of acquittal on the aggravated robbery charges but conviction of one or more theft or assault crimes. *See generally Baker*, 671 P.2d at 157 ("The defendant's right to a lesser included offense instruction is limited by the evidence presented at trial."). Accordingly, the district court committed no error when it refused to instruct the jury on the lesser included offenses of theft, assault, and aggravated assault.


CONCLUSION

¶19    Although Garcia-Vargas requested jury instructions on the lesser included offenses of theft, assault, and aggravated assault, there was no rational basis in the

---

[5](...continued)
        case of speculation, there is no underlying evidence to
        support the conclusion.
*Harding v. Atlas Title Ins. Agency, Inc.*, 2012 UT App 236, ¶ 7 (alteration in original) (citations and internal quotation marks omitted). Here, while it is possible that Garcia-Vargas did not intend to aid Freddy or commit robbery and only acted out of fear or some other innocent motivation, there is no evidence to that effect. The only evidence is that Garcia-Vargas *did* aid Freddy, giving rise to the presumption that he intended to do so. *See generally State v. Sisneros*, 631 P.2d 856, 859 (Utah 1981) (stating that a person is presumed to intend the natural consequences of his or her actions).

evidence for convicting him of these lesser offenses while acquitting him of the greater offenses of robbery and aggravated robbery. Garcia-Vargas's version of events differed from that of the victims, but even Garcia-Vargas's statements admitted to his active participation in Freddy's robbery of the two victims. The only reasonable inference from Garcia-Vargas's own statements is that once Freddy began to rob G.T. and R.S., Garcia-Vargas intentionally aided in that effort. This is sufficient to establish accomplice liability, and thus there was no "rational basis for a verdict acquitting [Garcia-Vargas] of the offense[s] charged and convicting him of the included offense[s]." *See State v. Spillers*, 2007 UT 13, ¶ 10, 152 P.3d 315. Accordingly, the district court did not err when it refused Garcia-Vargas's request for an instruction on the lesser included offenses of theft, assault, and aggravated assault.

_____
William A. Thorne Jr., Judge

-----

¶20    WE CONCUR:

_____
J. Frederic Voros Jr., Judge

_____
Michele M. Christiansen, Judge