2014 UT App 41

**STATE of Utah, Plaintiff and Appellee,**

v.

**Pailate K. LOMU, Defendant and Appellant.**

No. 20110759–CA.

Court of Appeals of Utah.

Feb. 27, 2014.

246

Joanna E. Landau, Attorney for Appellant Sean D. Reyes and John J. Nielsen, for Appellee.

Judge GREGORY K. ORME authored this Opinion, in which Judges J. FREDERIC VOROS JR. and STEPHEN L. ROTH concurred.

ORME, Judge:

¶1 Defendant Pailate Lomu appeals his conviction on a charge of aggravated robbery. *See* Utah Code Ann. § 76–2–202 (LexisNexis 2012); *id.* § 76–6–302. He argues that there was insufficient evidence to support his conviction and that the court erred when admitting evidence of other bad acts under rule 404(b) of the Utah Rules of Evidence. We affirm.

## BACKGROUND [1]

¶2 In April 2010, Defendant and another man entered a Maverik convenience store in West Valley City shortly before 3:30 a.m. They went directly to the cooler section, where Defendant picked up a case of Budweiser beer. The other man then stood by the door while Defendant approached the

1. We recite the facts in the light most favorable to the jury's verdict. *State v. Lee*, 2006 UT 5, ¶ 2,

128 P.3d 1179.

store clerk at the counter. The store clerk later testified that the man by the door was acting in a suspicious manner, alternately watching Defendant and looking outside. The store clerk informed the men that he was going to deny the sale because it was after 1:00 a.m. Defendant offered the clerk $100 for the beer anyway, and the clerk refused. At some point during the clerk's interaction with Defendant, the man at the door raised his shirt slightly, moved his hand to his hip, and informed the clerk he had a gun. Defendant then grabbed the beer, retained his $100 bill, and fled with the other man in a car driven by an unidentified individual. The store clerk called the police. The incident was captured by multiple surveillance cameras located in the store.

¶ 3 At trial, the store clerk testified regarding his own memory of the events, and portions of the video surveillance footage from the incident were shown to the jury. Defendant moved for a directed verdict based on insufficiency of the evidence, arguing that because the video surveillance did not contain audio it could not confirm the threat and that the store clerk's testimony was so inconsistent as to make it wholly incredible. The trial court denied the motion, stating that the store clerk's testimony was "sufficient enough to render it to be a decision of fact for the jury."

¶ 4 Evidence was also submitted to the jury, over Defendant's objections, of another after-hours beer robbery involving Defendant that occurred less than two months later at another Maverik store in West Valley City.[2] Defendant argued that there was no proper noncharacter purpose for admitting the evidence and that it was highly prejudicial. The trial court, however, determined that the evidence could be properly admitted under rule 404(b) of the Utah Rules of Evidence to show "plan, motive, intent, and purpose."

¶ 5 The jury convicted Defendant, who conceded he was guilty of shoplifting, of the much more serious offense of aggravated robbery. He appeals the conviction.

## ISSUES AND STANDARDS OF REVIEW

¶ 6 Defendant argues that the evidence was insufficient to support his aggravated robbery conviction. We will affirm a trial court's denial of a motion for dismissal made on the basis of insufficient evidence "if, upon reviewing the evidence and all inferences that can be reasonably drawn from it, we conclude that some evidence exists from which a reasonable jury could find that the elements of the crime had been proven beyond a reasonable doubt." *State v. Dibello*, 780 P.2d 1221, 1225 (Utah 1989).

¶ 7 Defendant next argues that the trial court abused its discretion by admitting evidence under rule 404(b) of the Utah Rules of Evidence of another beer robbery in which Defendant took part. We review a decision to admit evidence of other acts under rule 404(b) for an abuse of discretion. *State v. Nelson–Waggoner*, 2000 UT 59, ¶ 16, 6 P.3d 1120.

## ANALYSIS

### I. Insufficiency of the Evidence

¶ 8 A person is guilty of aggravated robbery if he uses or threatens to use a dangerous weapon while committing a theft, attempting a theft, or during immediate flight from a theft. Utah Code Ann. §§ 76–6–301, –302, –404 (LexisNexis 2012). Because Defendant did not personally make a threat against the clerk, he was charged as an accomplice. The State was therefore required to prove beyond a reasonable doubt that Defendant acted "with the mental state required for the commission of an offense" and "solicit[ed], request[ed], command[ed], encourage[d], or intentionally aid[ed] another" in committing a crime. *Id.* § 76–2–202.[3]

---

2. That case is the subject of another appeal, resolved in a separate opinion also issued today. *See State v. Lomu*, 2014 UT App 42.

3. As we noted in *State v. Binkerd*, 2013 UT App 216, 310 P.3d 755, a defendant can possess a different mental state than the principal actor

and still be guilty of a crime as an accomplice. *Id.* ¶¶ 24–29. The crux of a conviction under an accomplice theory is that the accomplice possessed the intent to commit *"an offense"* while assisting another person in committing a crime. *See* Utah Code Ann. § 76–2–202 (LexisNexis 2012) (emphasis added). *See also Binkerd*, 2013

¶ 9 Defendant claims that the evidence was insufficient to support his conviction of aggravated robbery for two reasons: (1) the store clerk's testimony was unreliable and (2) the evidence was not sufficient to show that he possessed the necessary mens rea. In determining whether the evidence presented to the jury was sufficient to support its verdict, we will "not sit as a second trier of fact." *State v. Boyd,* 2001 UT 30, ¶ 16, 25 P.3d 985. "So long as there is some evidence, including reasonable inferences, from which findings of all the requisite elements of the crime can reasonably be made," beyond a reasonable doubt, "our inquiry stops." *State v. Booker,* 709 P.2d 342, 345 (Utah 1985). *See State v. Dibello,* 780 P.2d 1221, 1225 (Utah 1989) (noting that evidence must be such as would allow "a reasonable jury [to] find that the elements of the crime had been proven beyond a reasonable doubt").

A. Reliability of the Store Clerk's Testimony

¶ 10 Defendant argues that the store clerk's testimony was sufficiently inconsistent as to render it "so inconclusive or inherently improbable that reasonable minds must have entertained a reasonable doubt" about whether Defendant committed the crime. *See State v. Gonzales,* 2000 UT App 136, ¶ 10, 2 P.3d 954 (citations and internal quotation marks omitted).

¶ 11 Defendant first contends that the clerk's testimony was contradictory because the clerk offered conflicting accounts as to whether the threat of a gun was made before or after Defendant offered to pay for the beer. Defendant also claims the testimony was unreliable because the clerk had been convicted of a crime involving dishonesty nearly three decades earlier.

¶ 12 Defendant next argues that the clerk's testimony was refuted by the surveillance video of the incident. Defendant argues that

the video footage shows no evidence of a threat and that it proves the man by the door "never spoke or opened his mouth." Also, Defendant points us to the store clerk's testimony that he raised both of his arms when threatened and that the man who made the threat was tapping his side [4] when he stated he had a gun. Defendant argues that the clerk's testimony is inconsistent with the video, which shows that the store clerk raised only one arm and that the man by the door did not tap his side.

¶ 13 Finally, Defendant argues that these inconsistencies, combined with the fact that the clerk improperly identified Defendant at trial as the man who stood by the door instead of the man who took the beer, makes the clerk's testimony so wholly inconsistent as to be inherently improbable.

¶ 14 We disagree. "[T]he definition of inherently improbable must include circumstances where a witness's testimony is incredibly dubious and, as such, apparently false." *State v. Robbins,* 2009 UT 23, ¶ 18, 210 P.3d 288. We will assess a witness's testimony under the doctrine of inherent improbability only when "(1) there are material inconsistencies in the testimony and (2) there is no other circumstantial or direct evidence of the defendant's guilt." *Id.* ¶ 19. Here, the inconsistencies in the store clerk's testimony, all of which were pointed out to the jury, are not so material that "no reasonable jury could find the defendant guilty beyond a reasonable doubt." *Id.* ¶ 18.

¶ 15 While the store clerk's testimony varied as to the timing of the threat, he consistently maintained that a threat was made. Whether the threat was made before or after Defendant offered to pay for the beer is irrelevant because by all accounts it was made before Defendant fled with the stolen beer.

¶ 16 We also conclude that the clerk's testimony was not conclusively refuted by the

UT App 216, ¶ 29, 310 P.3d 755. Here, Defendant was convicted of a crime requiring the same mens rea as the crime committed by his colleague. But identical mental states among co-perpetrators are not required for conviction under an accomplice theory. *See Binkerd,* 2013 UT App 216, ¶¶ 24–29, 310 P.3d 755.

4. The testimony about the man tapping his side was offered by the clerk at the preliminary hearing but was not repeated at trial.

surveillance video. The video does not, as Defendant contends, prove that the man by the door did not speak or move his lips during the incident. Rather, while the absence of audio and the angle and quality of the video make it impossible to tell if a threat was made, the footage makes it equally impossible to determine that a threat was *not* made. Further, while the video shows the clerk raising one arm rather than two, we agree with the State that the video supports, rather than contradicts, much of the store clerk's remaining testimony. The surveillance footage shows Defendant and another man entering the store, Defendant approaching the beer cooler, and Defendant grabbing some beer. The video then shows the other man standing by the door, looking at the store clerk. At one point he raises his shirt slightly, with his hand on his hip in the area where a holstered pistol would customarily be located. The two men then flee, Defendant with the beer in hand. We therefore cannot say that the surveillance video rendered the store clerk's testimony "so inconclusive and inherently improbable that reasonable minds must have entertained a reasonable doubt" about Defendant's guilt. *See State v. Gonzales*, 2000 UT App 136, ¶ 10, 2 P.3d 954 (citations and internal quotation marks omitted).

¶ 17 As to the remaining inconsistencies, "[t]he mere existence of conflicting evidence … does not warrant reversal," *State v. Warden*, 813 P.2d 1146, 1150 (Utah 1991), and so the fact that the clerk only raised one arm instead of two does not persuade us that Defendant's conviction was in error. Whether he raised one arm or two has little bearing on the jury's ultimate determination of whether Defendant committed a theft in connection with a threat involving a dangerous weapon. These inconsistencies are therefore in no way fatal to the conviction. *See Robbins*, 2009 UT 23, ¶ 19, 210 P.3d 288. Finally, because the identity of Defendant was not at issue in this case—Defendant admitted he was at the store and committed retail theft—the store clerk's confusion over whether Defendant was the man by the door or the accomplice who took the beer was also not material. The only issue left to be resolved, then, was whether a threat involving a dangerous weapon was actually made—a threat the store clerk consistently testified had occurred.

¶ 18 Because the surveillance video does not disprove the clerk's testimony that a threat was made and actually corroborates many aspects of the testimony; because a nearly three-decade-old conviction is not sufficient to require appellate reassessment of a witness's credibility; and because none of the inconsistencies in the clerk's testimony pointed out by Defendant are material, we conclude that the clerk's testimony was not so inherently inconsistent or improbable as to render the jury's verdict legally improper.

**B. Mens Rea**

¶ 19 Defendant next argues that even if the evidence was sufficient to show that a threat was made, it was not sufficient to show that he acted with the necessary mens rea. Defendant points to the fact that he tried to pay for the beer and claims he was unaware his colleague was going to make a threat.

¶ 20 "An accomplice must … have the intent that the underlying offense be committed." *State v. Briggs*, 2008 UT 75, ¶ 14, 197 P.3d 628. And "mere presence, or even prior knowledge, does not make one an accomplice to a crime absent evidence showing-beyond a reasonable doubt-that defendant advise[d], instigate[d], encourage[d], or assist[ed] in perpetuation of the crime." *In re V.T.*, 2000 UT App 189, ¶ 11, 5 P.3d 1234 (alterations in original) (citations and internal quotation marks omitted). When a defendant is put on notice that a co-perpetrator has acted in a way that elevates a simple theft to aggravated robbery and he chooses to "actively participate[ ] and aid[ ]" that person "rather than fleeing or even remaining without participating," it is proper for a jury to presume the defendant had the requisite mental state for the elevated crime. *See State v. Garcia–Vargas*, 2012 UT App 270, ¶ 17, 287 P.3d 474.

¶ 21 Here, there is evidence that even if Defendant had no prior knowledge that a gun threat would be made, and even though he did not personally make the threat, he

continued to assist in the commission of the crime after the threat was made. Defendant actively participated in the elevated crime by choosing to remove the beer from the store after the threat was made rather than leaving the beer behind and exiting the store or "remaining without participating." *See id.* Because "we conclude that some evidence exists from which a reasonable jury could find that the elements of the crime had been proven beyond a reasonable doubt," including—by inference—that Defendant stole the beer knowing a threat involving a gun had been made, Defendant's conviction of aggravated robbery under an accomplice theory is legally sustainable. *See State v. Dibello,* 780 P.2d 1221, 1225 (Utah 1989).

## II. Admission of Evidence Under Rule 404(b)

¶ 22 Defendant argues that the trial court abused its discretion when it admitted evidence of a subsequent beer robbery that also involved Defendant. Rule 404(b) allows evidence of other acts committed by a defendant to be admitted if it is relevant to a noncharacter purpose "such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." Utah R. Evid. 404(b). Even if found to be relevant for a noncharacter purpose, evidence of other acts may still be excluded "if its probative value is substantially outweighed by a danger" of unfair prejudice. *Id.* R. 403. Such evidence must be "scrupulously examined" by the trial court in order for it to be properly admitted. *State v. Decorso,* 1999 UT 57, ¶ 18, 993 P.2d 837.

### A. Noncharacter Purpose

¶ 23 Defendant argues that evidence of a beer robbery he participated in less than two months after the incident at issue was improperly admitted because there was no legitimate noncharacter purpose for admitting the evidence. In its ruling, the trial court stated that it was admitting the evidence for purposes of showing "plan, motive, intent, and purpose." Defendant argues on appeal that "[i]t is unclear how evidence of an unrelated and subsequent beer [theft] could possibly be relevant to [his] spontane-

ous decision to steal the beer in April, under different circumstances and with a different person." However, we agree with the State that the trial court did not abuse its discretion in admitting the evidence to show intent on the part of Defendant, i.e., to help show that he was not a mere shoplifter disinclined to steal beer if threats of violence were part of the transaction.

¶ 24 Contrary to Defendant's claim, the similarities between the two cases are substantial. In both incidents, each of which occurred at a Maverik convenience store in West Valley City, Defendant claimed he committed the thefts in the company of men he did not know until the night of the robberies. As to the April episode, he claimed to have met the men involved in that robbery—the man who stood by the door as well as a man who remained outside in a getaway car—at a dance that evening. In the incident less than two months later, Defendant claimed he was "just cruising around" with two men he had met at a party. Both incidents involved the men entering the Maverik stores, located less than five miles apart, at around 2:00 or 3:00 a.m. Both times, Defendant went immediately to the cooler section and removed beer while one of his companions stood by the door. And in both incidents, evidence was presented that the man by the door threatened the store clerk with a gesture or comment suggestive of a gun, at about the time Defendant walked out with the beer.

¶ 25 Given that Defendant's chief defense was that he did not intend to commit any crime greater than retail theft, the trial court's decision to admit evidence of Defendant's involvement in a second, practically identical crime was not an abuse of discretion. It was proper to allow the jury to determine whether Defendant could have twice unintentionally found himself at the same type of store, in the same city, with the intent to steal beer with complete strangers and without any knowledge of his companions' plans to make a gun threat, or whether the two incidents taken together were evidence of a higher likelihood that Defendant had the requisite intent for robbery or aggravated robbery. *See State v. Verde,* 2012 UT 60, ¶ 47, 296 P.3d 673 ("[E]vidence of prior

misconduct can be relevant under the so-called 'doctrine of chances.' . . . It is a theory of logical relevance that 'rests on the objective improbability of the same rare misfortune befalling one individual over and over.' ") (quoting Mark Cammack, *Using the Doctrine of Chances To Prove Actus Reus in Child Abuse and Acquaintance Rape: People v. Ewoldt Reconsidered,* 29 U.C. Davis L.Rev. 355, 388 (1996)).

¶ 26 We also conclude that the trial court scrupulously examined this evidence. Scrupulous examination can be inferred based on the fact that arguments for and against the admission of evidence were briefed and argued before the trial court, even if the trial court does not enter a specific ruling or expressly identify the factors it considered. *See State v. Bradley,* 2002 UT App 348, ¶ 38, 57 P.3d 1139; *State v. Widdison,* 2001 UT 60, ¶ 44, 28 P.3d 1278. Such is the case here. Prior to admitting the evidence, the trial court considered written briefs and heard argument from both sides. It had before it information regarding the similarities of the crimes and the purposes for which the State sought to introduce the evidence. The trial court then ruled that the evidence would be admitted for the purposes of illuminating "plan, motive, intent, and purpose." In light of the information the trial court considered before making its decision, the absence of a more detailed explanation by the trial court is not sufficient to show that the trial court neglected its duty to scrupulously examine the evidence under rule 404(b).

## B. Probative Value and Prejudice

¶ 27 Defendant next argues that the evidence "caused the jury to convict [Defendant] out of overmastering hostility against the weight of evidence." "The court may exclude relevant evidence if its probative value is substantially outweighed by a danger of . . . unfair prejudice[.]" Utah R. Evid. 403. Evidence is likely to unfairly prejudice a defendant when it has " 'an undue tendency to suggest decision on an im-

proper basis, commonly, though not necessarily, an emotional one.' " *State v. Maurer,* 770 P.2d 981, 984 (Utah 1989) (quoting Fed. R.Evid. 403 advisory committee note).

¶ 28 Traditionally, Utah courts have utilized what have become known as the "*Shickles* factors" in weighing the probative value of evidence against its potential for unfair prejudice. *State v. Burke,* 2011 UT App 168, ¶ 34, 256 P.3d 1102. However, we determined in *State v. Labrum,* 2014 UT App 5, 318 P.3d 1151, 2014 WL 69026, that when the evidence is offered in contemplation of the "doctrine of chances," courts should instead look to "four foundational requirements" to determine its probative value, as directed by the Utah Supreme Court in *State v. Verde,* 2012 UT 60, 296 P.3d 673. *See Labrum,* 2014 UT App 5, ¶ 28, 318 P.3d 1151 (citing *Verde,* 2012 UT 60, ¶ 57, 296 P.3d 673). These four requirements include materiality, similarity, independence, and frequency.[5] *Verde,* 2012 UT 60, ¶¶ 57–61, 296 P.3d 673. We conclude that although this case was tried prior to *Verde* and *Labrum* and their articulation of this new analytical framework, there are sufficient grounds to affirm the trial court's admission of the evidence based on *Verde's* foundational requirements. *See id.* ¶ 57.

¶ 29 First, in order to be material, "[t]he issue for which the uncharged misconduct evidence is offered 'must be in bona fide dispute.' " *Id.* (emphasis in original) (quoting Edward J. Imwinkelried, *The Use of Evidence of an Accused's Uncharged Misconduct To Prove Mens Rea: The Doctrines Which Threaten to Engulf the Character Evidence Prohibition,* 51 Ohio St. L.J. 575, 592 (1990)). Here, Defendant's intent to commit aggravated robbery was in question, and intent was the very reason the State sought to introduce evidence of the subsequent robbery.

¶ 30 Second, "there must be some significant similarity between the charged and uncharged incidents to suggest a decreased likelihood of coincidence." *Id.* ¶ 58.

---

5. In considering these four requirements, courts must keep in mind the "risk that the jury may draw an improper 'character' inference from the evidence or that it may be confused about the purpose of the evidence." *State v. Labrum,* 2014 UT App 5, ¶ 28.

As discussed above, the similarities between the two beer robberies make them almost identical. The crimes occurred at roughly the same time in the early morning with the same number of people,[6] involved the same type of beer and convenience store, and utilized the same general plan—Defendant took beer from the cooler section and fled while another man held the door and issued a threat.

¶ 31 Third, "each accusation must be independent of the others." *Id.* ¶ 60. There is nothing in the record to suggest that the store clerks collaborated in any way in making their accusations or that they were even aware of each other prior to trial.

¶ 32 Finally, we consider frequency. "The defendant must have been accused of the crime or suffered an unusual loss '*more frequently than the typical person endures such losses accidentally.*'" *Id.* ¶ 61 (emphasis in original) (quoting Imwinkelried, *supra* ¶ 29, at 590). To begin, we note that the commission of a crime on two occasions in a specific manner is certainly less compelling than the commission of the same crime a half dozen or more times. So in considering the probative value of other acts, courts should properly have in mind the principle that the fewer incidents there are, the more similarities between the crimes there must be. *Compare State v. Morrell*, 803 P.2d 292, 296 (Utah Ct.App.1990) (determining that the "almost identical factual pattern" between two robberies of pizza deliverymen, committed just a few months apart, justified admission of the first robbery to show intent), *with State v. Widdison*, 2001 UT 60, ¶¶ 24–27, 40–49, 28 P.3d 1278 (determining that the admission of numerous instances of prior child abuse was appropriate to show identity, intent, and lack of accident despite the fact that not all of the abuse evidence admitted was similar to the abuse inflicted in the case at hand). Here, the two crimes committed are almost identical, and the other robbery "was the only evidence, other than [D]efendant's and [the store clerk's] conflicting testimony, bearing on whether [D]efendant's in-

tent was to rob" the store or to merely shoplift. *See Morrell*, 803 P.2d at 296. We therefore conclude that the other robbery was "extremely probative" in determining Defendant's intent. *See id.*

¶ 33 Having taken all of the *Verde* requirements into account and having determined that there was substantial probative value in admitting evidence of the other episode, we must also consider whether the potential for prejudice or confusion from admitting the evidence substantially outweighed its probative value. *See* Utah R. Evid. 403; *State v. Labrum*, 2014 UT App 5, ¶ 28. The jury received the following instruction regarding the evidence:

> You have heard evidence relating to acts at a Maveri[k] Store on June 6, 2010, which occurred after the acts charged in this case. You may consider this evidence, if at all, for the limited purpose of motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake or accident. This evidence was not admitted to prove a character trait of the defendant or to show that he acted in a manner consistent with such a trait. Keep in mind that the defendant is on trial for the crime charged in this case, and for that crime only. You may not convict a person simply because you believe he may have committed some other act at another time.

Especially in light of this instruction, we conclude that the possibility the jury would convict on an improper basis was remote, *see State v. Maurer*, 770 P.2d 981, 984 (Utah 1989), and that the trial court did not abuse its discretion in determining that the danger of unfair prejudice did not substantially outweigh the probative value of permitting the evidence to be admitted.

¶ 34 Defendant finally contends that the court failed to scrupulously examine the evidence under rule 403 and that the court failed to consider all of the necessary *Shickles* factors. However, as we have stated, the *Shickles* factors have been largely supplanted with the four *Verde* requirements

6. In the June episode, the third man joined Defendant in raiding the beer cooler rather than just waiting in the car.

when evidence is admitted in contemplation of the doctrine of chances. And, as with examination under rule 404(b) and the *Shickles* factors, we conclude that scrupulous examination under rule 403, by means of the *Verde* requirements, can be inferred when the trial court has heard arguments on the relevant issues and has made "sufficient inquiry," even if that inquiry was not "expressly" identified by the court. *See State v. Nielsen*, 2012 UT App 2, ¶ 16 n. 3, 271 P.3d 817. Here, the court heard all of the information required for full analysis of prejudice under rule 403 and necessary to assess materiality, similarity, independence, and frequency when it accepted briefing and heard argument related to admission of the evidence. The State argued its reasons for wanting the evidence admitted and the similarities between the crimes. The trial court also heard argument from Defendant regarding the relevance of the evidence and potential prejudice that its admission presented. We therefore conclude that the court did not err in its admission of the evidence because all of the *Verde* factors were either briefed or argued by the parties, and we can easily infer that the trial court considered and scrupulously examined them.

## CONCLUSION

¶ 35 The evidence was sufficient to support Defendant's conviction because the evidence was adequate to show both that a threat was made and that Defendant had the requisite mens rea to commit aggravated robbery. The trial court properly admitted evidence of the subsequent beer robbery because there was both a proper noncharacter purpose for doing so and because the prejudice of doing so did not substantially outweigh its probative value. In admitting the evidence, the trial court undertook the necessary scrupulous examination of the evidence.

¶ 36 Affirmed.