**2016 UT App 167**

## THE UTAH COURT OF APPEALS

STATE OF UTAH,
Appellee,
*v.*
ARTHUR JACOB RACKHAM,
Appellant.

Opinion
No. 20140969-CA
Filed August 4, 2016

Second District Court, Ogden Department
The Honorable Noel S. Hyde
No. 111902819

Linda M. Jones and Erin Bergeson Hull, Attorneys
for Appellant

Michelle A. Jeffs and Jeffrey G. Thomson, Attorneys
for Appellee

JUDGE STEPHEN L. ROTH authored this Opinion, in which JUDGE
KATE A. TOOMEY and SENIOR JUDGE PAMELA T. GREENWOOD
concurred.[1]

ROTH, Judge:

¶1     Arthur Jacob Rackham appeals his conviction for sexual battery, a class A misdemeanor. Because we conclude that the trial court exceeded its discretion by admitting certain evidence under rule 404(b) of the Utah Rules of Evidence, we vacate the conviction and remand for a new trial.

---

1. Senior Judge Pamela T. Greenwood sat by special assignment as authorized by law. *See generally* Utah R. Jud. Admin. 11-201(6).

BACKGROUND

¶2    On the afternoon of July 23, 2010, sixteen-year-old K.M. was at home in her garage vacuuming her mother's car. While she was "bent over" and leaning into an open driver-side door, twenty-four-year-old Rackham, a relative, entered the garage. Rackham came up behind K.M., put his hands on her stomach, and made a "we-e-e-e sound in [her] ear." K.M. pushed Rackham away. Rackham again approached K.M. and this time put his hand under her shirt and brushed her breast over her bra. K.M. again pushed Rackham away, told him never to touch her again, and went inside to report the incident to her parents.

¶3    K.M. had previous encounters with Rackham during which she had told him not to touch her. On one occasion, when she was home alone watching television, Rackham arrived at her house. He began tickling her and lifting up her shirt. She "told him to stop it and he didn't, he just laughed it off." On another occasion, she and a friend were "playing around" in the yard with Rackham and his brother while visiting her grandparents' house. Rackham "kept pushing [K.M. and her friend] over and tickling [them] and grabbing [their] butts and thinking that it was funny." K.M. "told him to knock it off[,] but he just laughed."

¶4    Soon after the incident in the garage, K.M.'s father competed in a bike race; K.M., her mother, and her sister, twelve-year-old T.M., were helping with the event's registration table. At some point during the race, Rackham approached T.M. at the table, whispered her name, started to rub her stomach over her shirt, and moved his hand toward, but did not touch, her pant line. T.M. immediately told her mother what had occurred.

¶5    Following the incident with T.M., K.M. and T.M.'s father confronted Rackham. Rackham denied intentionally touching K.M. but admitted that he might have accidentally "grazed" her.

He admitted to touching T.M. but claimed that he was just trying to get her "to warm up to him."

¶6    K.M.'s father reported the incident with K.M. to the police. At that point, he also informed other relatives about what had happened in order to "protect all the nieces . . . [and] cousins." After speaking with two of Rackham's uncles, he learned that their daughters, M.F. and K.R., had also been inappropriately touched by Rackham and that Rackham was being prosecuted in connection with his actions toward K.R.

¶7    M.F. alleged that in 2001, when she was eight years old, Rackham gave her and another relative, A.R.,[2] back rubs while they were visiting Rackham's family on vacation. During the back rub, Rackham touched M.F.'s chest and genitals under her clothing. She reported the incident to her parents "a few months later." She did not become aware of incidents involving other relatives until approximately 2012.

¶8    K.R. alleged that between 1997 and 2005, when she was between the ages of seven and fifteen, Rackham frequently touched her breasts and genitals both above and below her clothing. This touching was often accompanied by tickling, back rubs, and whispering in her ear. On one occasion, when Rackham was sleeping at her house, K.R. "woke up to him with [her] pants off," at which point she went into the bathroom, locked herself in, and slept there. She did not discuss these incidents with anyone until 2007 and was unaware at that time of incidents involving other relatives. Rackham was ultimately charged in connection with this conduct and pleaded no contest to sexual battery.

---

2. Testimony at trial suggested that Rackham also touched A.R. inappropriately at this time, but no evidence was presented relating the details of that alleged abuse.

¶9   In December 2011, the State charged Rackham with one count of sexual battery based on the July 2010 incident with K.M. This charge required proof that Rackham intentionally touched K.M.'s breast under circumstances that he knew or should have known would "likely cause affront or alarm" to her. *See* Utah Code Ann. § 76-9-702.1(1) (LexisNexis Supp. 2015).[3]

¶10   The State filed a motion in limine seeking to admit evidence of Rackham's prior incidents of misconduct for the noncharacter purposes of proving Rackham's knowledge that touching K.M. would cause affront or alarm and rebutting Rackham's defense of fabrication under the doctrine of chances. Specifically, the State sought to introduce evidence of K.M.'s two prior encounters with Rackham, T.M.'s encounter with Rackham at the bicycle race, M.F. and A.R.'s encounter with Rackham while on vacation, and K.R.'s history of interactions with Rackham.

¶11   The trial court granted the State's motion in limine, admitting the evidence solely for the purpose of proving knowledge. The court rejected the State's argument regarding the doctrine of chances, however, concluding that the evidence did not meet the foundational requirement of independence outlined in *State v. Verde*, 2012 UT 60, 296 P.3d 673.

¶12   Following a two-day trial, the jury found Rackham guilty of sexual battery. Rackham now appeals.

---

3. Rackham was charged with sexual battery in violation of Utah Code section 76-9-702(3) as it existed in 2011. In 2012 the Utah Legislature amended this provision and recodified it as section 76-9-702.1. *See* 2012 Utah Laws ch. 303 § 4. Because this amendment did not materially alter the elements of sexual battery, we cite the most recent version of the Utah Code Annotated.

ISSUE AND STANDARD OF REVIEW

¶13 Rackham challenges the trial court's admission of the rule 404(b) evidence with respect to T.M., M.F., A.F., and K.R.[4] "A district court's decision to admit evidence under rule 404(b) [of the Utah Rules of Evidence] is entitled to some deference. But such a decision can withstand our review only if the evidence falls within the bounds marked by the legal standards set forth in the rules of evidence." *Verde*, 2012 UT 60, ¶ 19.[5]

ANALYSIS

¶14 The determination of whether evidence of prior bad acts is admissible involves a three-part inquiry: first, we consider whether the evidence has been "offered for a genuine, noncharacter purpose"; second, we consider whether the evidence is relevant to the noncharacter purpose; and third, we

---

4. Rackham does not dispute the admissibility of evidence relating to his prior encounters with K.M.

5. Rackham also argues that he received ineffective assistance of counsel due to a number of errors during trial. Specifically, he asserts that his counsel performed deficiently by failing to object to one witness's testimony regarding his emotional reactions, not asking the court to strike inadmissible hearsay evidence, and failing to object to the prosecution's cross-examination of Rackham regarding his prior sexual battery conviction and the prosecution's use of that conviction during closing argument to encourage the jury to decide the case on an improper basis. While we agree with Rackham that at least some of counsel's actions raise cause for concern, we ultimately do not address Rackham's ineffective assistance arguments because we are vacating his conviction and remanding for a new trial due to the inadmissibility of the rule 404(b) evidence.

consider whether "the probative value of the evidence . . . [is] substantially outweighed by the danger of unfair prejudice." *State v. Reece*, 2015 UT 45, ¶ 57, 349 P.3d 712 (citation and internal quotation marks omitted).

¶15 Rackham first asserts that the rule 404(b) evidence was not offered for a proper noncharacter purpose, because he did not controvert the knowledge element of the crime charged. The Utah Supreme Court considered a similar issue in *State v. Verde*, 2012 UT 60, 296 P.3d 673. In *Verde*, the supreme court held that "admissibility of prior misconduct evidence cannot be sustained under rule 404(b) on the mere basis of a defendant's not-guilty plea." *Id.* ¶ 23. Although "[a] not-guilty plea technically puts every element of a crime at issue," *id.* ¶ 22, where an element "is uncontested and readily inferable from other evidence, 404(b) evidence is largely tangential and duplicative," *id.* ¶ 26. Accordingly, the *Verde* court held that the State could not use rule 404(b) evidence for the noncharacter purpose of proving intent where, among other things, the defendant did not contest intent at trial, the defendant offered to stipulate to intent at the outset, and intent could be readily inferred from evidence that the defendant had groped the victim's genitalia. *Id.* ¶¶ 25–27.

¶16 Although Rackham's defense, like that of the defendant in *Verde*, relied on his assertion that the alleged conduct did not occur, this case is distinguishable from *Verde*. Unlike the *Verde* defendant, Rackham never offered to stipulate to the knowledge element and did not explicitly concede the knowledge element at trial.[6] And unlike the trial court in *Verde*, the trial court here did

---

6. Rackham stated that as a result of his participation in sex-offender therapy, which he began in 2013, he "learned that . . . tickling and poking . . . nieces that are in the age of maturing is definitely not appropriate," but he indicated that "[a]t the time" of the charged events, "it didn't even cross [his] mind."

not mechanically rely on the not-guilty rule to determine that the rule 404(b) evidence was offered for a noncharacter purpose; rather, it determined that, under the circumstances, there was still a need for the State to meet its burden as to the knowledge requirement. Further, unlike in *Verde*, the touching itself, if proved, could not necessarily be depended upon to imply sexual battery's somewhat arcane knowledge element—that the actor knew or should have known the touch would "likely cause affront or alarm to the person touched." *See* Utah Code Ann. § 76-9-702.1(1) (LexisNexis Supp. 2015). In the absence of a stipulation to or concession of the knowledge element, we agree with the trial court that Rackham's claim that the conduct did not occur did not eliminate the State's burden to prove knowledge in this case. Thus, the proposed rule 404(b) evidence served a proper, noncharacter purpose.

¶17 We next consider whether the proffered evidence was relevant to the issue of knowledge. "Evidence is relevant if (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." Utah R. Evid. 401. The State asserts that the rule 404(b) evidence was relevant to establish the knowledge element because it demonstrated that Rackham had previous experience with his young cousins and nieces becoming alarmed or affronted by his unwanted touching. Because the relevance inquiry establishes "a very low bar that deems even evidence with the slightest probative value relevant," *State v. Richardson*, 2013 UT 50, ¶ 24, 308 P.3d 526 (citation and internal quotation marks omitted), we conclude that the evidence relating to M.F., A.F., and K.R. was relevant to the issue of knowledge. However, the evidence relating to T.M. was not relevant because the events involving T.M. occurred *after* the events involving K.M. Thus, evidence of T.M.'s response to Rackham touching her stomach could not have made it any more probable that Rackham knew K.M. would be alarmed by his advances.

¶18   Finally, we consider whether the probative value of the remaining rule 404(b) evidence was substantially outweighed by the danger of unfair prejudice under rule 403. In making this determination, a "court may consider a number of factors," including those articulated in *State v. Shickles*, 760 P.2d 291 (Utah 1988), *abrogated on other grounds by State v. Doporto*, 935 P.2d 484 (Utah 1997), which include:

> the strength of the evidence as to the commission of the other crime, the similarities between the crimes, the interval of time that has elapsed between the crimes, the need for the evidence, the efficacy of alternative proof, and the degree to which the evidence probably will rouse the jury to overmastering hostility.

*State v. Lucero*, 2014 UT 15, ¶ 31, 328 P.3d 841 (quoting *Shickles*, 760 P.2d at 295–96). Nevertheless, we are "bound by the text of rule 403, not the limited list of considerations outlined in *Shickles*." *Id.* ¶ 32; *see also State v. Cuttler*, 2015 UT 95, ¶ 18, 367 P.3d 981. Thus, in evaluating and assessing the *Shickles* factors, we must keep in mind that our ultimate goal is to weigh the "probative value of the evidence" against the "'danger of unfair prejudice.'" *See id.* (emphasis omitted) (quoting Utah R. Evid. 403). We conclude that while evidence relating to Rackham's encounters with M.F., A.F., and K.R. has some probative value with respect to the knowledge element, any probative value is substantially outweighed by the danger of unfair prejudice.

¶19   First, the evidence does have some probative value regarding the issue of knowledge. The State was required to establish Rackham's knowledge that his behavior would "likely cause affront or alarm to the person touched." *See* Utah Code Ann. § 76-9-702.1(1). M.F.'s and K.R.'s testimony was strong evidence of knowledge because it indicated that Rackham had caused affront or alarm to young female relatives whom he had

touched in the past, which supported an inference that he was or should have been aware that similar touching of K.M. (or even any young female) would likely be unwelcome in the same way. The evidence relating to A.F., however, was weak because A.F. did not testify, there was no evidence of her reaction to Rackham's actions, and the evidence presented was limited to innuendo and inference.[7] Thus, the strength of the evidence, except with regard to A.F., suggests that the evidence had probative value and weighs in favor of admission.

¶20   The lack of similarity between the acts, however, undermines the probative value of the rule 404(b) evidence and weighs against admission. Unlike K.M., who alleged that Rackham touched her breast over her bra, M.F. and K.R. testified that Rackham touched their breasts and genitals under their clothing, and K.R. testified that this happened on many occasions over a number of years. Evidence that Rackham knew that such egregious touching had been alarming to M.F. and K.R. does little to indicate how he would have expected K.M. to react to the touching that allegedly occurred here. The age difference and the difference in gravity between the touching that occurred in this case and the touching that occurred with respect to M.F. and K.R. also emphasize the potential for unfair prejudice, as the more intimate touching of much younger girls could have improperly influenced the jury to convict Rackham of the less serious charge here, a factor that weighs strongly against admission.

¶21   Finally, there was not a strong need for the evidence relating to M.F., A.F., and K.R., because K.M.'s own testimony provided ample evidence in support of the knowledge element. K.M. testified that, just prior to Rackham touching her breast and

_____

7. Indeed, it is likely this testimony should have been deemed inadmissible on other grounds, such as hearsay.

also on two previous occasions, she had made it clear to him that even his arguably nonsexual touching was unwelcome. The jury could easily have concluded from this evidence that Rackham knew he would cause affront or alarm to K.M. by touching her breast, and the evidence regarding M.F., A.F., and K.R. was not needed to bolster that conclusion. Thus, we conclude that the probative value of the rule 404(b) evidence relating to M.F., A.F., and K.R. for the purpose of proving knowledge was substantially outweighed by the danger of unfair prejudice.

¶22   The State contends that the rule 404(b) evidence should alternatively have been admitted under the doctrine of chances to rebut Rackham's defense of fabrication. "Under the doctrine of chances, evidence offered to prove actus reus must not be admitted absent satisfaction of four foundational requirements": materiality, similarity, independence, and frequency. *State v. Verde*, 2012 UT 60, ¶¶ 57–61, 296 P.3d 673. The trial court determined that the independence requirement—that "each accusation must be independent of the others" without "the existence of collusion among various accusers," *id.* ¶ 60—was not met, because all the allegations came from "the same extended family members" and had "been discussed among those family members at various times." The trial court recognized that the initial allegations were made independently, in that the victims were unaware of other allegations at the time they reported. Nevertheless, the trial court concluded that because the family members had discussed the allegations among themselves "at various times," the testimony to be presented at trial was not sufficiently independent "to justify the application of the Doctrine of Chances."

¶23   The State asserts that the independence requirement is met here because the family members did not discuss the allegations amongst themselves until 2010, after the alleged conduct occurred. But the trial court clearly understood that the allegations had been *reported* independently; it was the potential

impact of the post-allegation discussions on the rule 404(b) witnesses' ultimate testimony with which the trial court was concerned. In light of this concern, we do not consider it to have been an abuse of the court's discretion to exclude the rule 404(b) evidence for purposes of demonstrating fabrication under the doctrine of chances. Thus, we cannot affirm the admission of the rule 404(b) evidence on this alternative ground.

¶24   "If, in the absence of the evidentiary errors, there is a reasonable likelihood of a more favorable outcome for [a] defendant, we must reverse the conviction." *State v. Harmon*, 956 P.2d 262, 271 (Utah 1998) (citation and internal quotation marks omitted). "This case rests on a credibility determination as to whose version of events"—Rackham's or K.M.'s—"is accurate." *See State v. Leber*, 2010 UT App 387, ¶ 12, 246 P.3d 163. The State relied heavily on the evidence regarding Rackham's prior interactions with T.M., M.F., A.F., and K.R. to corroborate K.M.'s story, and the presentation of that evidence took up a great deal of trial time when compared to the presentation of facts underlying the charge itself. Thus, the possibility that Rackham's conviction reflected the jury's assessment of his character, rather than the evidence of the crime he was charged with, is not insubstantial. Accordingly, "the likelihood of a different outcome" in the absence of the rule 404(b) evidence at issue here is "sufficiently high to undermine confidence in the verdict." *See State v. Bujan*, 2006 UT App 322, ¶¶ 31–32, 142 P.3d 581 (citation and internal quotation marks omitted), *aff'd*, 2008 UT 47, 190 P.3d 1255. For these reasons, we vacate Rackham's conviction and remand for a new trial.

## CONCLUSION

¶25   Although the rule 404(b) evidence in this case was offered for a proper noncharacter purpose, evidence relating to T.M. was not relevant, and the probative value of evidence relating to M.F., A.F., and K.R. was substantially outweighed by the danger

of unfair prejudice. Thus, the evidence was not admissible to prove knowledge. However, the trial court did not exceed its discretion in concluding that the evidence was not sufficiently independent to be admissible for the purpose of rebutting a fabrication defense under the doctrine of chances. Because the erroneous admission of the challenged rule 404(b) evidence undermines our confidence in the verdict, we vacate Rackham's conviction and remand for a new trial.

————