APPLEBY, Judge:
 

 ¶1 Anthony Tyrone Lane appeals his convictions for aggravated assault and possession of a dangerous weapon by a restricted person. He argues the district court erred in applying the doctrine of chances and improperly admitted prejudicial prior act evidence. He also argues his trial counsel was ineffective for failing to request the trial court judge's disqualification based on remarks she made during a pretrial hearing. We reject Lane's ineffective assistance of counsel claim but conclude the prior act evidence should have been excluded and therefore remand for a new trial.
 

 BACKGROUND
 

 ¶2 Lane lives in Salt Lake City.
 
 [1]
 
 In February 2016, he was in a physical altercation with the victim (Victim) at a homeless shelter. Lane was arrested and charged with aggravated assault and possession of a dangerous weapon by a restricted person. Trial was held in August 2016.
 

 ¶3 Victim was the first witness to testify. Victim previously lived at the shelter and returned there that day to pick up mail. After realizing the mailroom was closed, he wandered around talking to people. There were "50 to 100 people milling around" the shelter, including Lane. Victim testified that as he was talking, he "got side blinded, got punched in the face and ... just started swinging back at the direction that it came from." Several people broke up the fight. Victim "took a few steps" back and "then it started up again." Victim testified he got
 punched again, "went down to duck a punch," and when he came back up, he "was bleeding." He thought he had just been punched but guessed he "ended up getting sliced." Victim sustained three lacerations to his face as a result of the incident. Lane ended up with a small cut on his finger. Victim denied using a knife in the altercation and denied having one.
 

 ¶4 The State presented surveillance footage of the incident. At first, Victim could not identify himself on the video recording and testified he was unsure with whom he was fighting. Victim added that it was "hard to see" what was going on in the footage. He testified multiple times he did not know who hit him. After the altercation, Victim left the scene to try to catch a train to a hospital. He was bleeding severely and had a towel on his face when he was stopped by a security officer. Police officers arrived and called for an ambulance. Victim was treated at a hospital for his injuries.
 

 ¶5 A witness (Witness) to the altercation also testified. Witness was a shelter resident who saw Lane and Victim "get into an altercation" and then being "pulled apart." He testified he saw Lane "excuse[ ] himself," but then "they got into [a] second altercation [and he] noticed both of them had blades." "A crowd was following them," and "when [Lane] left and [Victim] pursued," the crowd "let them get into it again." Witness saw Lane "sidestep [Victim] and throw a punch back at him." Witness testified that Lane "clearly took off ... [and] was trying to avoid that whole mess."
 

 ¶6 One of the responding officers (Officer) also testified. Officer commonly patrols the shelter and considers it a "high crime area." He investigates "anywhere from 15 to 30" incidents a day, ranging from "drug crimes on up to pretty serious cases." He testified that it is "not uncommon for people to have guns and all sorts of other things down there." He arrived on the scene and Victim told him that he challenged Lane first for "being a big mouth" and "acting tough." When shown footage of the incident, Officer testified he "couldn't tell a whole lot from the surveillance video."
 

 ¶7 The second day of trial primarily consisted of testimony regarding two prior incidents involving Lane. Before trial, the State filed a motion asking the court to admit evidence of incidents that occurred at the shelter in 2012 (2012 Incident) and 2015 (2015 Incident). The State sought to introduce the evidence under rule 404(b) of the Utah Rules of Evidence or, in the alternative, the doctrine of chances. The State argued that these incidents were offered for a proper non-character purpose under rule 404(b) to show "intent, plan, absence of mistake, motive, lack of accident, and to rebut [Lane's] self-defense claim." Specifically, the State argued that "the prior bad act evidence will prove [Lane assaulted Victim with unlawful force or violence] by showing that [Lane] knew what he was doing when he assaulted [Victim] with a sharp object, that he had a plan and motive to injure [Victim], and that he was not acting in self-defense." The State also argued this evidence was relevant and that the probative value was not substantially outweighed by unfair prejudice.
 

 ¶8 In the alternative, the State argued the evidence should be admitted under the doctrine of chances. The State contended "the evidence of [Lane's] two prior bad acts [was] offered to counter his claim of self-defense in the current case" and to "show that it is unlikely that [he] would be placed in a situation three times in four years that would require cutting the victims' faces in self-defense." The State claimed it was not "assert[ing] that [Lane] has a propensity for cutting faces." The State argued that the evidence was relevant, it was being offered for a proper non-character purpose, and its probative value substantially outweighed its prejudicial effect.
 

 ¶9 The district court ruled that the two prior incidents involving Lane were admissible under the doctrine of chances because the foundational requirements were met (that is, materiality, similarity, independence, and frequency). The court admitted the evidence of the two incidents on this ground but did not evaluate it under rule 403.
 

 ¶10 At trial, the following evidence was presented regarding the 2015 Incident. A woman (2015 Witness) who once lived at the
 shelter testified first. She testified that the altercation began with Lane arguing with a man and Lane was "as always ... letting him know who he was." 2015 Witness testified that after the two stopped yelling Lane walked away, then returned and "slashed" the man in the face. She testified the other man did not have a weapon. After that, 2015 Witness approached the man and put a shirt on his face and waited for medical assistance. After 2015 Witness was excused, the court-without prompting from the parties-reminded the jury that the "last witness has to do with a separate incident from the one we talked about yesterday. And witnesses from here on out are separate, right? 2015 instead of 2016."
 

 ¶11 A responding officer (2015 Officer) also testified about the 2015 Incident. He was patrolling the shelter that day and separated Lane from a man with whom Lane was arguing. A few minutes after separating the men, 2015 Officer was called to respond to a "fight with a knife." As 2015 Officer approached, he saw a man "being attended to by several other individuals ... [and 2015 Officer] could see blood seeping through [a] cloth [held to the man's face]. There was blood on the ground and then also blood on the [man's] shirt." The individuals attending to the man told 2015 Officer that Lane cut him.
 
 [2]
 
 When 2015 Officer encountered Lane after the incident, Lane told 2015 Officer "it was self-defense." Another responding officer testified that officers seized a box cutter from Lane. The other man was transported to the hospital for a "deep laceration" on the left side of his face "starting just above the ear and continuing all the way down to the corner of his mouth." Lane was later charged with assault in connection with the 2015 Incident. The case went to trial and a jury found Lane not guilty.
 

 ¶12 The State next introduced evidence from the 2012 Incident. A responding officer (2012 Officer) was called to the shelter on a report of a "man with a knife." 2012 Officer "noticed [Lane] bleeding from the mouth, [and it] looked like he'd been involved in an altercation." 2012 Officer observed a knife approximately seven to eight feet away from Lane that was "silver in color, had a wooden handle, [and] about a 4-inch blade." Lane told 2012 Officer the knife was his. 2012 Officer could not recall whether there was blood on it. He testified Lane was the only individual bleeding. A second officer testified that Lane said the man he was fighting with "struck him with a head-butt and then punched him and then [Lane] drew a knife." Lane claimed he produced the knife in self-defense. He pled guilty to assault for the 2012 Incident.
 

 ¶13 At the conclusion of trial, the jury convicted Lane of two felony charges: aggravated assault and possession of a dangerous weapon by a restricted person. The court sentenced Lane and he appeals.
 

 ISSUES AND STANDARDS OF REVIEW
 

 ¶14 Lane raises two issues on appeal. First, Lane contends the district court improperly applied the doctrine of chances analysis in admitting evidence of the 2012 and 2015 incidents. "The appropriate standard of review for a district court's decision to admit or exclude evidence is abuse of discretion."
 
 State v. Lowther
 
 ,
 
 2017 UT 34
 
 , ¶ 17,
 
 398 P.3d 1032
 
 (quotation simplified). "A district court abuses its discretion when it admits or excludes evidence under the wrong legal standard."
 

 Id.
 

 (quotation simplified). Reversal is warranted if "absent the error, there was a reasonable likelihood of a more favorable result for the party," and therefore "our confidence in the jury's verdict is undermined."
 
 Robinson v. Taylor
 
 ,
 
 2015 UT 69
 
 , ¶ 39,
 
 356 P.3d 1230
 
 (quotations simplified).
 

 ¶15 Second, Lane contends his trial counsel was ineffective for failing to request the trial judge's disqualification based on remarks she made to him during a pretrial hearing. "An ineffective assistance of counsel claim raised for the first time on appeal presents a question of law."
 
 State v. Ott
 
 ,
 
 2010 UT 1
 
 , ¶ 16,
 
 247 P.3d 344
 
 (quotation simplified).
 

 ANALYSIS
 

 I. Prior Act Evidence
 

 ¶16 Lane argues the district court improperly applied the doctrine of chances in admitting evidence of the 2012 and 2015 incidents. Specifically, Lane contends the court erred in admitting the prior act evidence under rule 404(b) without also weighing it under rule 403. We agree.
 

 ¶17 It is "fundamental in our law that a person can be convicted only for acts committed, and not because of general character or a proclivity to commit bad acts."
 
 State v. Reed
 
 ,
 
 2000 UT 68
 
 , ¶ 23,
 
 8 P.3d 1025
 
 . This concept is articulated in rule 404(b) of the Utah Rules of Evidence, which provides that "[e]vidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in conformity with the character." Utah R. Evid. 404(b)(1). But "[t]his evidence may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident."
 

 Id.
 

 R. 404(b)(2).
 

 ¶18 The "doctrine of chances" is also used to admit otherwise excludable prior act evidence under rule 404(b). It is "a theory of logical relevance that rests on the objective improbability of the same rare misfortune befalling one individual over and over."
 
 State v. Verde
 
 ,
 
 2012 UT 60
 
 , ¶ 47,
 
 296 P.3d 673
 
 (quotation simplified),
 
 abrogated on other grounds by
 

 State v. Thornton
 
 ,
 
 2017 UT 9
 
 ,
 
 391 P.3d 1016
 
 . This evidence is used in cases that involve "rare events happening with unusual frequency."
 
 State v. Lopez
 
 ,
 
 2018 UT 5
 
 , ¶ 52,
 
 417 P.3d 116
 
 . Evidence admitted under the doctrine of chances must satisfy four foundational requirements.
 
 [3]
 

 Verde
 
 ,
 
 2012 UT 60
 
 , ¶ 57,
 
 296 P.3d 673
 
 . "These ... include materiality, similarity, independence, and frequency."
 
 State v. Lomu
 
 ,
 
 2014 UT App 41
 
 , ¶ 28,
 
 321 P.3d 243
 
 (citing
 
 Verde
 
 ,
 
 2012 UT 60
 
 , ¶ 5,
 
 296 P.3d 673
 
 ).
 

 ¶19 The difficulty in applying rule 404(b) "springs from the fact that evidence of prior bad acts often will yield dual inferences."
 
 Verde
 
 ,
 
 2012 UT 60
 
 , ¶ 16,
 
 296 P.3d 673
 
 . "[E]vidence of a person's past misconduct may plausibly be aimed at establishing motive or intent, but that same evidence may realistically be expected to convey a simultaneous inference that the person behaved improperly in the past and might be likely to do so again in the future."
 
 Id
 
 . "If such evidence is really aimed at establishing a defendant's propensity to commit a crime, it should be excluded despite a proffered ... legitimate purpose."
 
 Id.
 
 ¶ 17 (quotation simplified).
 

 ¶20 If a court finds a proper non-character purpose for the evidence, it must also engage in a separate rule 403 analysis to weigh these competing concerns.
 
 Id.
 
 ¶¶ 17-18. Weighing this evidence is "essential to preserve the integrity of rule 404(b). Without it, evidence of past misconduct could routinely
 be allowed to sustain an inference of action in conformity with bad character-so long as the proponent of the evidence could proffer a plausible companion inference that does not contravene the rule."
 
 Id.
 
 ¶ 18.
 

 ¶21 For purposes of our analysis we assume, without deciding, that the evidence in this case was admissible under rule 404(b).
 
 [4]
 
 In its ruling, the district court correctly articulated the standard for admitting prior act evidence. First, a court must determine whether the evidence is offered for a proper non-character purpose. Next, a court must find that the evidence's "probative value is not substantially outweighed by the danger of 'unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence.' " (Quoting Utah R. Evid. 403.) But despite articulating the proper standard, the court failed to apply rule 403 when it found the 2012 and 2015 incidents admissible under the doctrine of chances.
 
 [5]
 
 Its analysis simply consisted of mechanically applying
 
 Verde
 
 's foundational requirements under rule 404(b).
 
 See
 

 State v. Lowther
 
 ,
 
 2017 UT 34
 
 , ¶ 1,
 
 398 P.3d 1032
 
 (holding that the district court abused "its discretion by mechanically applying the
 
 Shickles
 
 factors to assess the probative value of the State's rule 404(b) evidence"). In other words, the court applied the wrong legal standard in admitting this evidence by not conducting a separate rule 403 analysis. This amounts to an abuse of discretion.
 
 See
 

 id.
 
 ¶ 17.
 

 ¶22 Courts must "carefully consider whether [prior act evidence] is genuinely being offered for a proper, non-character purpose, or whether it might actually be aimed at sustaining an improper inference of action in conformity with a person's bad character."
 
 Verde
 
 ,
 
 2012 UT 60
 
 , ¶ 18,
 
 296 P.3d 673
 
 . "[E]ven if the evidence may sustain both proper and improper inferences under rule 404(b)," courts must "balance the [inferences] against each other under rule 403, excluding bad acts evidence if its tendency to sustain a proper inference is outweighed by its propensity for an improper inference or for jury confusion about its real purpose."
 

 Id.
 

 As we articulated
 
 supra
 
 ¶ 18 note 3, courts should not "make a mechanical application" of any factors under rule 403 but should simply apply the text of the rule.
 
 Lowther
 
 ,
 
 2017 UT 34
 
 , ¶ 33 n.51,
 
 398 P.3d 1032
 
 .
 

 ¶23 In this case, the prior act evidence should have been excluded because the prejudicial inference that Lane's character predisposes him to get in knife fights and then claim self-defense substantially outweighs the State's proffered justifications for admitting the evidence. The State claimed it was offering the evidence to show Lane's "non-character purpose of intent, plan, absence of mistake, motive, lack of accident, and to rebut [his] self-defense claim." Specifically, the State argued the evidence would prove Lane's unlawful use of force or violence "by showing that [he] knew what he was doing when he assaulted [Victim] with a sharp object, that he had a plan and motive to injure [Victim], and that he was not acting in self-defense, but that he was, in fact, the actual aggressor." The State also argued the evidence should be admitted under the doctrine of chances. It argued that the prior act evidence shows that "it is unlikely that [Lane] would be placed in a situation three times in four years that would require cutting
 the victims' faces in self-defense." The State claimed it was not asserting that Lane "has a propensity for cutting faces."
 

 ¶24 Merely stating that evidence is not being offered for propensity purposes does not mean the evidence does not present an improper propensity inference. First, it is not highly strange or unlikely that Lane would need to defend himself multiple times over years of living in a high crime area. Officer testified at trial that he encounters many individuals carrying weapons in that area and responds to "15 to 30" incidents a day ranging from "drug crimes" up to "pretty serious cases." Further, the proffered use of the evidence presented by the State is substantially outweighed by the unfairly prejudicial inference that Lane has the character of someone who continuously provokes altercations, cuts the faces of his victims, and then claims self-defense.
 

 ¶25 The way the evidence was presented at trial also supports our conclusion that the prior act evidence in this case presented a prejudicial propensity inference. In opening statements the State told the jury how to view the prior act evidence. "We're here today on an aggravated assault case so I want to tell you a little bit about that. In [2015], prior to the incident in 2016 that we'll be trying over the next two days, the defendant got into an argument with an individual." The State continued,
 

 [Lane] pulled out a box cutter and sliced ... [the individual] across the face, opening his cheek. When [Lane] was arrested ... he said he was only defending himself, it was self-defense. But then he said he would do it again. And that is why we are here today for this 2016 case because he did exactly what he said he was going to do.
 
 He did it again
 
 .
 

 (Emphasis added.) The statement that Lane "did it again" is precisely the type of propensity inference rule 404(b) prohibits.
 
 See
 
 Utah R. Evid. 404(b) ("Evidence of a crime ... is not admissible to prove a person's character in order to show that on a particular occasion the person acted in conformity with the character.");
 
 State v. Burke
 
 ,
 
 2011 UT App 168
 
 , ¶ 28,
 
 256 P.3d 1102
 
 (holding "evidence of a defendant's bad acts is not admissible to prove that a defendant has a propensity for bad behavior and has acted in conformity with his dubious character"); Edward J. Imwinkelried,
 
 Criminal Minds: The Need to Refine the Application of the Doctrine of Objective Chances as a Justification for Introducing Uncharged Misconduct Evidence to Prove Intent
 
 ,
 
 45 Hofstra L. Rev. 851
 
 , 856 (2017) [hereinafter Imwinkelried] ("It is axiomatic that the jurors may not reason that the other act shows the accused's bad character and that 'if he did it once, he did it again.' ").
 

 ¶26 Next, we address whether admitting the prior act evidence was prejudicial to the outcome of trial. The evidence presented at trial for Lane's 2016 charges, standing alone, was weak and based on circumstantial evidence. Victim never identified Lane as his attacker, none of the police officer witnesses saw the incident, and the defense witness testified he saw Lane "trying to avoid that whole mess" and that "both [Lane and Victim] had blades." Also, the surveillance footage from 2016 was blurry and it was "hard to see" what occurred.
 

 ¶27 The prior act evidence also took up a significant portion of the two-day trial. The State finished presenting its evidence of the 2016 charges on the first day and spent most of the second day presenting the prior act evidence. Further, at the beginning of the second day, after the first witness testified regarding the prior act evidence, the court sua sponte addressed the jury to remind it that the State was no longer presenting evidence of Lane's 2016 charges. Based on how the evidence presented at trial, it was possible that Lane's conviction "reflected the jury's assessment of his character, rather than the evidence of the crime he was charged with."
 
 State v. Rackham
 
 ,
 
 2016 UT App 167
 
 , ¶ 24,
 
 381 P.3d 1161
 
 . Because the 2016 evidence was weak and the prior act evidence took up a significant portion of the trial, "the likelihood of a different outcome in the absence of the rule 404(b) evidence ... is sufficiently high to undermine confidence in the verdict."
 

 Id.
 

 (quotation simplified).
 

 ¶28 We also note that the jury instruction does not cure the prejudice in this case. The stipulated instruction states,
 

 You have heard evidence that [Lane] brandished a knife in a fight and that he cut an individual's face with a box cutter. Both of these acts occurred before the acts charged in this case. You may consider this evidence, if at all, for the limited purpose of self-defense. This evidence was not admitted to prove a character trait of the defendant or to show that he acted in a manner consistent with such a trait. Keep in mind that the defendant is on trial for the crimes charged in this case, and for those crimes only. You may not convict a person simply because you believe he may have committed some other acts at another time.
 

 The State argues any improper use of the 2012 and 2015 incidents at trial was cured through this instruction. We disagree that this instruction properly informed the jury on how to use the evidence from the 2012 and 2015 incidents.
 
 See
 
 Imwinkelried at 878 (noting that the risk of unfair prejudice can be minimized by a "clear [and] forceful limiting instruction"). The instruction tells the jury it is allowed to consider the 2012 and 2015 incidents for "self-defense" but at the same time it is not allowed to "convict a person simply because you believe he may have committed some other acts at another time." This seems to tell the jury it is allowed to consider Lane's propensity for getting in fights and arguing he was acting in "self-defense" while simultaneously telling it not to convict Lane because he may have been in fights before and then claimed "self-defense."
 

 ¶29 We conclude that the prior act evidence should have been excluded before trial under rule 403 and, had it been excluded, there is a "reasonable likelihood of a more favorable result."
 
 Robinson v. Taylor
 
 ,
 
 2015 UT 69
 
 , ¶ 39,
 
 356 P.3d 1230
 
 (quotation simplified).
 

 II. Trial Judge Disqualification
 

 ¶30 Lane also contends his counsel was ineffective for failing to request the judge's disqualification because of remarks she made to Lane during a pretrial hearing. We disagree.
 

 ¶31 To succeed on his ineffective assistance of counsel claim, Lane must show "(1) that counsel's performance was so deficient as to fall below an objective standard of reasonableness and (2) that but for counsel's performance there is a reasonable probability that the outcome of the trial would have been different."
 
 State v. Montoya
 
 ,
 
 2004 UT 5
 
 , ¶ 23,
 
 84 P.3d 1183
 
 (quotation simplified). "To prevail on the first prong of the test, a defendant must identify specific acts or omissions demonstrating that counsel's representation failed to meet an objective standard of reasonableness."
 
 Id.
 
 ¶ 24 (quotation simplified). Lane fails to meet the first prong in this case.
 

 ¶32 During a pretrial hearing Lane's counsel asked the court to release Lane from jail pending trial. The State opposed his release arguing that the allegations of the current charges along with "his criminal history ... show[s] that he is a danger to the community" and that "he could potentially be a flight risk." In response the judge stated, "What concerns me is the difficulty with the self-defense claim when you are the one introducing a weapon into a fight. Even if someone else starts that fight, you then can't introduce a weapon into that fight. ... That's what makes you a danger to society." The judge concluded, "I am not inclined to do a release at this time, not after I've looked at the slashed faces of people you've had contact with."
 

 ¶33 The court found Lane was "a danger to society" in the context of considering whether to release him before trial. The court was not, as Lane argues, making a premature determination of his guilt,
 
 [6]
 
 but merely engaging in routine and necessary analysis for purposes of determining his pretrial release status.
 
 See
 

 State v. Kucharski
 
 ,
 
 2012 UT App 50
 
 , ¶ 4,
 
 272 P.3d 791
 
 ("The fact that a judge has formed an opinion regarding a particular defendant based on proceedings occurring in front of the judge is not a ground for disqualification." (citing Utah Code of Judicial Conduct rule 2.11(A)));
 
 see also
 

 id.
 

 ("[B]ias or prejudice requiring disqualification must usually stem from an extrajudicial
 source, not from occurrences in the proceedings before the judge." (quotation simplified)).
 

 ¶34 We conclude these statements do not establish that the judge was biased and therefore Lane's trial counsel was not ineffective for not requesting the judge's disqualification.
 
 See
 

 State v. Tueller
 
 ,
 
 2001 UT App 317
 
 , ¶ 16,
 
 37 P.3d 1180
 
 (explaining that if "there was no actual bias in the trial judge's actions, we cannot say that trial counsel's failure to attempt to disqualify the judge constitutes" deficient performance);
 
 see also
 

 State v. Munguia
 
 ,
 
 2011 UT 5
 
 , ¶ 19,
 
 253 P.3d 1082
 
 (explaining that if the judge is not required to recuse herself, defense counsel is not ineffective for not requesting it).
 

 CONCLUSION
 

 ¶35 We reject Lane's ineffective assistance of counsel claim and find that the judge's statements did not amount to bias requiring disqualification. But we conclude that Lane was prejudiced by the admission of the prior act evidence. The prior act evidence should have been excluded and we reverse and remand for a new trial.
 

 "On appeal, we recite the facts in the light most favorable to the jury's verdict."
 
 State v. Martinez
 
 ,
 
 2013 UT App 154
 
 , ¶ 2 n.1,
 
 304 P.3d 110
 
 .
 

 Defense counsel objected to this statement as hearsay and the court sustained the objection but did not instruct the jury to disregard the statement.
 

 In
 
 State v. Lowther
 
 , the Utah Supreme Court clarified confusion over whether the doctrine of chances requirements should be assessed as elements under rule 404(b) or as factors replacing the
 
 Shickles
 
 factors under rule 403.
 
 2017 UT 34
 
 , ¶ 21,
 
 398 P.3d 1032
 
 .
 

 In
 
 State v. Shickles
 
 , the supreme court articulated a set of factors district courts should consider in conducting a rule 403 balancing test prior to admitting 404(b) evidence.
 
 760 P.2d 291
 
 , 295-96 (Utah 1988),
 
 abrogated by
 

 State v. Doporto
 
 ,
 
 935 P.2d 484
 
 (Utah 1997). In
 
 State v. Verde
 
 ,
 
 2012 UT 60
 
 ,
 
 296 P.3d 673
 
 ,
 
 abrogated on other grounds by
 

 State v. Thornton
 
 ,
 
 2017 UT 9
 
 ,
 
 391 P.3d 1016
 
 , the court articulated a different set of factors courts should consider for the doctrine of chances but it was unclear whether those factors were intended to replace the
 
 Shickles
 
 factors under rule 403.
 
 See
 

 State v. Lowther
 
 ,
 
 2015 UT App 180
 
 , ¶ 25,
 
 356 P.3d 173
 
 ("Given this court's decision in
 
 State v. Labrum
 
 , to interpret
 
 Verde
 
 as replacing
 
 Shickles
 
 , the trial court's strict adherence to
 
 Shickles
 
 is misplaced."),
 
 aff'd on other grounds
 
 ,
 
 2017 UT 34
 
 ,
 
 398 P.3d 1032
 
 . The supreme court clarified in
 
 Lowther
 
 that district courts should not "make a mechanical application" of any factors but should simply "apply the text of rule 403." 2017 UT APP 34, ¶ 33 n.51,
 
 398 P.3d 1032
 
 . Specifically, the court held that "in performing a rule 403 balancing test, a court is not bound by [
 
 Verde
 
 's] foundational requirements" and can consider any relevant factors in applying the text of rule 403.
 
 Id.
 
 ¶ 21.
 

 But it has always been clear that traditional balancing of probative value and prejudicial effect under rule 403 is required prior to admitting 404(b) evidence.
 
 See, e.g.
 
 ,
 
 State v. Thornton
 
 ,
 
 2017 UT 9
 
 , ¶ 36,
 
 391 P.3d 1016
 
 ;
 
 Verde
 
 ,
 
 2012 UT 60
 
 , ¶ 15,
 
 296 P.3d 673
 
 ;
 
 State v. Lomu
 
 ,
 
 2014 UT App 41
 
 , ¶ 33,
 
 321 P.3d 243
 
 ;
 
 State v. Labrum
 
 ,
 
 2014 UT App 5
 
 , ¶ 18,
 
 318 P.3d 1151
 
 .
 

 Lane does not ask this court to find that the doctrine of chances should not be used to rebut a defense of self-defense. But, as the concurring opinion points out, we have our doubts that it should be applied in this context.
 

 Rule 403 balancing is always required before admitting evidence under rule 404(b).
 
 See
 

 Lomu
 
 ,
 
 2014 UT App 41
 
 , ¶ 33,
 
 321 P.3d 243
 
 ("Having taken all of the
 
 Verde
 
 requirements into account and having determined that there was substantial probative value in admitting evidence of the other episode, we
 
 must also
 
 consider whether the potential for prejudice or confusion from admitting the evidence substantially outweighed its probative value." (emphasis added));
 
 Labrum
 
 ,
 
 2014 UT App 5
 
 , ¶ 18,
 
 318 P.3d 1151
 
 ("Evidence offered under rule 404(b) is admissible if it is relevant for a non-character purpose
 
 and
 
 meets the requirements of Rules 402 and 403." (emphasis added) (quotation simplified));
 
 see also
 
 R. Collin Mangrum & Dee Benson,
 
 Mangrum & Benson on
 

 Utah Evidence
 
 203 (2018-2019 ed.) ("Rule 403 codifies the common law authority of the judge to balance the probative weight of
 
 any item
 
 of evidence against its overall unfairness. If a drafter were required to reduce all the rules of evidence into two rules, it would be rules 402 and 403." (emphasis added)).
 

 We also note that the jury, not the judge, was the factfinder in this case.