**2019 UT App 162**

## THE UTAH COURT OF APPEALS

STATE OF UTAH,
Appellee,
*v.*
MATTHEW GORDON EYRE,
Appellant.

Amended Opinion[1]
No. 20180016-CA
Filed October 3, 2019

Third District Court, Salt Lake Department
The Honorable Royal I. Hansen
No. 161909443

Alexandra S. McCallum, Attorney for Appellant

Sean D. Reyes and Lindsey Wheeler, Attorneys
for Appellee

JUDGE KATE APPLEBY authored this Opinion, in which
JUDGES JILL M. POHLMAN and DIANA HAGEN concurred.

APPLEBY, Judge:

¶1 Matthew Gordon Eyre appeals his conviction for aggravated robbery and raises two issues on appeal. First, he argues his trial counsel (Trial Counsel) was ineffective for failing to object to a jury instruction that purportedly misstated the mens rea requirement for accomplice liability. Second, Eyre argues his motion for a mistrial should have been granted after

---

1. This amended opinion replaces the opinion in case No. 20180016-CA that was issued on July 26, 2019 to incorporate our supreme court's recent decision in *State v. Silva*, 2019 UT 36. *See infra*, ¶¶ 29–32. This amended opinion does not alter any conclusions reached in our original opinion.

the jury viewed the recording of his police interview during its deliberations. In the alternative, he argues Trial Counsel was ineffective for failing to ensure the recording was kept out of the jury room. We affirm.

BACKGROUND

¶2    In August 2016, the victims (Boyfriend and Girlfriend) drove to downtown Salt Lake City in a Dodge Challenger to purchase drugs. Eyre, along with two others, Driver and Passenger, were in a parked Chrysler PT Cruiser. Passenger decided he wanted to steal the Challenger. Eyre told Passenger it was a bad idea. Passenger said he "was going to ask [Boyfriend] for a jump start" for the PT Cruiser. Eyre claims that "as soon as [Passenger] got out of the car," he started "spinning [the] whole fuckin' jump thing." Boyfriend agreed to help jump start the PT Cruiser.

¶3    Boyfriend parked the Challenger next to the PT Cruiser. Girlfriend remained in the car as Boyfriend got out, opened the hood, and stood between the two vehicles talking to Passenger. Passenger told Eyre and Driver to look for jumper cables in the trunk. After rummaging around in the trunk pretending to look for the cables, Eyre walked up to Passenger and told him they did not have any. Eyre claims he did not know what was said afterward between Boyfriend and Passenger.

¶4    According to Boyfriend and Girlfriend, Passenger lifted his shirt and showed a pistol tucked into his waistband. Passenger announced, "You know what this is. We are taking everything. . . . Get your bitch out of the car. I'm going to pistol whip her." Boyfriend testified that Eyre displayed a pistol as well, while Girlfriend testified she did not see Eyre with a pistol or see him leave the trunk area of the PT Cruiser.

¶5    Girlfriend passed a gun to Boyfriend through the passenger side window of the Challenger. Boyfriend testified that Passenger drew his gun and pointed it in Boyfriend's

direction so Boyfriend fired his gun at Passenger; Passenger died later that day. Eyre fled the scene.

¶6     Girlfriend and Boyfriend started driving away in the Challenger, followed by Driver in the PT Cruiser. Driver hit the Challenger's rear end, causing the PT Cruiser to flip over. Boyfriend and Girlfriend drove away. They parked nearby and discarded Boyfriend's gun before the police arrived and arrested Boyfriend. While searching the Challenger the police found a gun cleaning kit, a scale for measuring drugs, two bags of marijuana, and thirty-seven bags of suspected Spice.[2] The police found a pistol magazine in the PT Cruiser. Other than this evidence, they found "[v]ery little physical evidence" at the crime scene, which was "compromised" by various individuals who rushed there and stole things from the PT Cruiser and Passenger after the shooting.

¶7     The police spoke to a witness who gave a description of Eyre, and this information led an officer to stop him nearby. The officer initially let Eyre leave after he denied involvement with the shooting, but he later was arrested and interviewed. Police never recovered a gun from him, but the State charged Eyre with aggravated robbery, a first degree felony, under a theory of accomplice liability. The case went to trial in October 2017.

¶8     The parties stipulated to a "blanket admission" of all exhibits including: a map of the area, photos of the scene, photos of Eyre during his interview with police, a surveillance video of the area, a video of Eyre's interview with police (Exhibit 11), and the pistol magazine recovered from the PT Cruiser. According to Trial Counsel, the parties agreed that Exhibit 11 could be played

---

2. Spice is a "synthetic version of tetrahydrocannabinol (THC), the psychoactive ingredient in marijuana." United States Drug Enforcement Admin., *Spice/K2, Synthetic Marijuana*, https://www. dea.gov/factsheets/spice-k2-synthetic-marijuana [https://perma.c c/74GC-D8SL?type=image].

at trial but Trial Counsel was under the impression that the video would not go back to the jury room during deliberations. All exhibits went back to the jury room.

¶9     During deliberations, the jury asked for a computer so it could view the video exhibits. A computer was provided but Trial Counsel assumed the jury wanted to view a different video, not Exhibit 11. After twenty minutes Trial Counsel realized the jury might have access to Exhibit 11 and immediately notified a court employee. The bailiff retrieved the computer from the jury room and confirmed the jury watched Exhibit 11.

¶10     Trial Counsel moved for a mistrial on the grounds that watching Exhibit 11 a second time, while it deliberated, may have improperly influenced the jury. The court took the motion under advisement pending the verdict. After the jury returned a guilty verdict, the court ordered briefing on the mistrial motion. It ruled that the "jury's viewing of Exhibit 11 in the jury room during deliberations was improper." But it denied the motion, finding the error was harmless because sufficient evidence supported the verdict, Eyre would have benefited from any weight the jury may have placed on viewing Exhibit 11 multiple times, and the jury had access to Exhibit 11 only for a short period. The court sentenced Eyre to an indeterminate prison term of ten years to life. Eyre appeals.

ISSUES AND STANDARDS OF REVIEW

¶11     Eyre raises two issues on appeal.[3] Eyre argues Trial Counsel was ineffective for failing to object to a jury instruction

---

3. Eyre also argues the cumulative effect of the claimed errors warrants reversal. Because we conclude Trial Counsel was not ineffective and the court correctly denied the motion for a mistrial, "there are no errors to accumulate, and the cumulative error doctrine does not apply." *State v. Squires*, 2019 UT App 113, ¶ 45 n.10.

that misstated the mens rea requirement for accomplice liability and for failing to ensure Exhibit 11 was not sent into the jury room. "An ineffective assistance of counsel claim raised for the first time on appeal presents a question of law." *State v. Coombs*, 2019 UT App 7, ¶ 16, 438 P.3d 967 (quotation simplified).

¶12     Eyre also argues the district court erred in denying his motion for a mistrial. "We review a trial court's ruling on a motion for a mistrial for abuse of discretion . . . ." *State v. Murphy*, 2019 UT App 64, ¶ 15, 441 P.3d 787.

ANALYSIS

I. Jury Instruction

¶13     Eyre argues Trial Counsel was ineffective for failing to object to a jury instruction (Instruction 40) that misstated the mens rea requirement for accomplice liability. To succeed on his ineffective assistance of counsel claim, Eyre must show "(1) that counsel's performance was so deficient as to fall below an objective standard of reasonableness and (2) that but for counsel's performance there is a reasonable probability that the outcome of the trial would have been different." *State v. Lane*, 2019 UT App 86, ¶ 31 (quotation simplified). "To prevail on the first prong of the test, a defendant must identify specific acts or omissions demonstrating that counsel's representation failed to meet an objective standard of reasonableness." *Id.* (quotation simplified). Eyre fails to meet the first prong in this case.

¶14     "To evaluate whether trial counsel performed deficiently in failing to object to the jury instructions, we must first consider whether those instructions were legally correct." *State v. Liti*, 2015 UT App 186, ¶ 12, 355 P.3d 1078. Accomplice liability attaches to "[e]very person, acting with the mental state required for the commission of an offense who directly commits the offense, who solicits, requests, commands, encourages, or intentionally aids another person to engage in conduct which

constitutes an offense." Utah Code Ann. § 76-2-202 (LexisNexis 2017).

¶15 Accomplice liability requires a defendant to act with the mental state necessary to commit the offense, which in this case is aggravated robbery. A person commits robbery when "the person unlawfully and intentionally takes or attempts to take personal property in the possession of another from his person." *Id.* § 76-6-301(1)(a). "A person commits aggravated robbery if in the course of committing robbery he: (a) uses or threatens to use a dangerous weapon . . . (b) causes serious bodily injury . . . or (c) takes or attempts to take an operable motor vehicle." *Id.* § 76-6-302(1). In this case, the State had the burden of showing both that Eyre intended the aggravated robbery to take place and that he solicited, requested, commanded, encouraged, or intentionally aided Passenger in committing aggravated robbery.

¶16 The disputed portion of Instruction 40 states that the jury could find Eyre guilty of aggravated robbery under the theory of accomplice liability if it found beyond a reasonable doubt that "(1) [Eyre] intentionally, (2) solicited, requested, commanded, encouraged, or intentionally aided another to commit the offense." Eyre argues this instruction is incomplete because it did not inform the jury that it must also find that Eyre had the intent that the aggravated robbery be committed as required by *State v. Jeffs*, 2010 UT 49, 243 P.3d 1250.

¶17 Although it is true that Instruction 40 would have been clearer if it had included this directive, other jury instructions clarified the mens rea requirement.[4] Jury instruction 41

---

4. We note that while Utah's model jury instructions (MUJI) "are merely advisory and do not necessarily reflect correct statements of Utah law," *C.R. England v. Swift Transp. Co.*, 2019 UT 8, ¶ 34 n.59, 437 P.3d 343 (quotation simplified), they are "a useful starting point for drafting an appropriate instruction," *State v. Sellers*, 2011 UT App 38, ¶ 22 n.7, 248 P.3d 70. In this case, the

(continued…)

(Instruction 41) instructed the jury that it needed to find that Eyre intended for Passenger to steal the Challenger. In fact, Instruction 41 stated three separate times that the jury could find Eyre guilty only if it found beyond a reasonable doubt that he had the mental state required to commit aggravated robbery. Instruction 41 provided:

> Prior knowledge that a crime is about to be committed or is being committed does not make a person an accomplice, and thereby does not subject them to criminal prosecution *unless that person has the mental state required to commit the crime* and he solicits, requests, commands, encourages, or intentionally aids in the perpetration of the crime. Further, his mere presence at the crime scene does not in itself subject him to criminal prosecution for any crime, *unless you find beyond a reasonable doubt he possessed the mental state required to commit the crime* and he acted in such a manner that he solicited, requested, commanded, encouraged, or intentionally aided in the perpetration of the crime. *If, on the other hand, you have a reasonable doubt as to whether the defendant possessed the mental state required to commit the crime* or whether he solicited,

---

(…continued)

parties deviated from MUJI, which correctly states that the defendant must have "the mental state required to commit the charged offense" in addition to having "intentionally, knowingly, or recklessly solicited, requested, commanded or encouraged another person to commit the charged offense" or "intentionally aided another person to commit the charged offense." Model Utah Jury Instructions 2d CR403B (Advisory Committee on the Model Utah Criminal Jury Instructions 2018), https://www.utcourts.gov/resources/muji/ [https://perma.cc/J8YT-BZ8E].

> requested, commanded, encouraged, or
> intentionally aided in the perpetration of the
> crime(s), you must find him not guilty of the
> charge.

(Emphasis added.)

¶18   Jury instruction 39 also informed the jury that it must find that Eyre acted "with the mental state required for the commission of the offense." Eyre argues that these instructions are insufficient because the State told the jury to focus on Instruction 40 during closing arguments. We do not find this argument persuasive. While we do not know which instructions the jury ultimately chose to focus on, the court instructed the jury that "[t]here will be many instructions. All are equally important. Don't pick out one and ignore the rest. Think about each instruction in the context of all the others." Thus, "[w]e review jury instructions in their entirety to determine whether the instructions, taken as a whole, fairly instructed the jury about the applicable law." *Liti*, 2015 UT App 186, ¶ 12.

¶19   Eyre maintains that the jury would be unable to glean from the phrase "possessed the mental state required to commit the crime" that Eyre needed to act with intent to cause aggravated robbery. We are not persuaded. Eyre was charged with one crime in this case, aggravated robbery, and jury instruction 35 detailed the elements of the crime, including that Eyre needed to have "unlawfully and intentionally take[n] or attempted to take personal property in the possession of another . . . with the purpose or intent to deprive the person permanently or temporarily of the personal property." Reading this instruction together with the instructions that used relevant statutory language on accomplice liability, which requires that Eyre "act[] with the mental state required for the commission of [the] offense," Utah Code Ann. § 76-2-202, the jury instructions as a whole adequately explained the mens rea requirement for accomplice liability. *See State v. Clark*, 2014 UT App 56, ¶¶ 54–55, 322 P.3d 761 (holding that the jury was properly instructed on

accomplice liability for aggravated robbery when the instruction was "substantively identical to the accomplice liability statute" and contained the elements for the underlying crime of aggravated robbery, including the required mens rea); *State v. Augustine*, 2013 UT App 61, ¶ 10, 298 P.3d 693 (same).

¶20  It is not deficient performance for counsel to agree to jury instructions that accurately and adequately inform the jury of the relevant law. *See State v. Lee*, 2014 UT App 4, ¶ 23, 318 P.3d 1164 ("[E]ven if one or more of the instructions, standing alone, are not as full or accurate as they might have been, counsel is not deficient in approving the instructions as long as the trial court's instructions constituted an correct statement of the law." (quotation simplified)).

¶21  We conclude that the instructions as a whole adequately instructed the jury on accomplice liability for aggravated robbery, and therefore Eyre has not met his burden of showing that Trial Counsel's performance was deficient. *See Clark*, 2014 UT App 56, ¶¶ 54–55; *Lee*, 2014 UT App 4, ¶ 23.

## II. Police Interview

¶22  Eyre raises two arguments with respect to the jury's access to Exhibit 11 during its deliberations. First, Eyre argues that the district court erred in denying his motion for a mistrial. Second, he argues Trial Counsel was ineffective for failing to ensure Exhibit 11 stayed out of jury deliberations. We address each argument in turn.

¶23  Eyre argues the district court erred when it denied his motion for a mistrial after the jury was allowed to view Exhibit 11 during its deliberations. The State argues that Eyre failed to preserve this issue for appeal because his motion for a mistrial was untimely. We disagree with the State that the issue is unpreserved but conclude that Eyre invited the error and is therefore not entitled to a new trial on this ground.

¶24   When a defendant or his counsel is responsible for the error at trial, the defendant cannot argue on appeal that a mistrial motion should have been granted. *See State v. Barney*, 681 P.2d 1230, 1231 (Utah 1984) (holding that when an "alleged error [is] invited by [the] defendant's own counsel" the "defendant is in no position to request a mistrial"); *see also State v. Tafuna*, 2012 UT App 243, ¶ 22, 286 P.3d 340 (holding that the defendant's "counsel invited any error in allowing a potentially tainted juror to serve when counsel affirmatively declined to object after becoming aware of [the issue]" and "[t]his decision constituted a waiver of the issue by defense counsel").

¶25   In this case, Trial Counsel invited any alleged error by stipulating to a blanket admission of all exhibits, including Exhibit 11. Trial Counsel further invited any error by working with the State to gather the exhibits to send with the jury into the deliberation room, and by failing to object when the jury asked for a computer to view the video exhibits. The mistake in allowing the jury access to Exhibit 11 rests with Trial Counsel, who acknowledged to the court that he "messed up."

¶26   This is not to say a defendant is without a remedy if his counsel invites an error at trial. The defendant can argue his counsel rendered ineffective assistance. But in this case, Eyre's ineffective assistance of counsel claim also fails.

¶27   As discussed above, to succeed on his ineffective assistance of counsel claim, Eyre must show "(1) that counsel's performance was so deficient as to fall below an objective standard of reasonableness and (2) that but for counsel's performance there is a reasonable probability that the outcome of the trial would have been different." *Lane*, 2019 UT App 86, ¶ 31 (quotation simplified). Eyre fails to meet the first prong in this case.

¶28   It was not deficient performance for Trial Counsel to stipulate to the admission of Exhibit 11. "The failure of counsel to make objections which would be futile if raised does not constitute ineffective assistance." *State v. Malaga*, 2006 UT App

103, ¶ 10, 132 P.3d 703 (quotation simplified). Here, where Exhibit 11 was plainly admissible as a statement of a party opponent, Utah R. Evid. 801(d)(2), any objection would have been futile.

¶29　Further, it was not deficient performance for Trial Counsel to not object to Exhibit 11 entering the jury room, given that jurors are generally permitted to review exhibits during deliberations. Rule 17(k) of the Utah Rules of Criminal Procedure provides that during deliberations, "the jury may take with them the instructions of the court and all exhibits which have been received as evidence, except exhibits that should not, in the opinion of the court, be in the possession of the jury, such as exhibits of unusual size, weapons or contraband."

¶30　Although this rule "permits the jury to take most exhibits into the deliberations . . . exhibits which are testimonial in nature should not be given to the jury during its deliberations." *State v. Cruz*, 2016 UT App 234, ¶ 35, 387 P.3d 618 (quotation simplified). Eyre argues that his out-of-court statements are the type of "testimonial" evidence that should not go back to the jury room and that Trial Counsel performed deficiently by failing to object on the basis.

¶31　But Utah law has only extended this principle to recorded or transcribed testimony that substitutes a witness's live testimony. *See State v. Carter*, 888 P.2d 629, 642 (Utah 1995) (holding that a transcript of a prior trial and sentencing proceeding is admissible in a subsequent proceeding but should not enter jury deliberations), *superseded by statute as stated in Archuleta v. Galetka*, 2011 UT 73, 267 P.3d 232; *State v. Solomon*, 87 P.2d 807, 811 (Utah 1939) (holding that the trial court erred in sending a transcript used to impeach a witness into jury deliberations); *Cruz*, 2016 UT App 234, ¶ 38 (holding that while CJC interviews of child victims are admissible evidence, they should not be sent back with the jury during deliberations). Utah appellate courts have not treated recordings of defendants' police interviews as "testimonial in nature" for purposes of excluding them from the jury room.

¶32 And although we do not decide today whether a defendant's interview with police is subject to the same testimonial evidence exception articulated above, we note that several jurisdictions allow juries to have access to these recorded interviews. *See Rael v. People*, 2017 CO 67, ¶ 26, 395 P.3d 772 (explaining that "[c]ourts have long treated jury access to transcripts and recordings of a defendant's own out-of-court statements differently from jury access to transcripts and recordings of other witnesses' out-of-court statements"); *Flonnory v. State*, 893 A.2d 507, 523–27 (Del. 2006) (holding that tape- or video-recorded statements admitted under a statute allowing for admission of a "voluntary out-of-court statement of a witness" "should *not* be admitted into evidence as separate trial exhibits that go with the jury into the jury room during deliberations," but explaining that this rule applies only to "statements of witnesses *other than* the criminal defendant" and "does *not* apply to written or recorded confessions or incriminating statements"); *Lucas v. State*, 34 So. 3d 195, 196 (Fla. Dist. Ct. App. 2010) (holding that it was not an abuse of discretion for the court to allow jury access to a videotape of the defendant's voluntary statement to police because it "was not a deposition or out-of-court witness testimony" or "a substitute for [the defendant's] live testimony at trial"). We recognize that trial counsel is not "categorically excused from failure to raise an argument not supported by existing legal precedent." *State v. Silva*, 2019 UT 36, ¶ 19. But given the unfavorable state of the law on this issue, trial counsel's failure to object did not fall below an objective standard of reasonableness. *See State v. Love*, 2014 UT App 175, ¶ 7, 332 P.3d 383 (explaining that "counsel cannot be faulted for failing to advance a novel legal theory which has never been accepted by the pertinent courts" (quotation simplified)).

¶33 In sum, Trial Counsel invited any alleged error by affirmatively stipulating to a blanket admission of all exhibits and by allowing all the evidence to go back into the jury room and therefore waived any argument for a mistrial. But Trial Counsel was not ineffective in failing to object to the

admissibility of Exhibit 11 because such an objection would have been futile. Trial Counsel also did not perform deficiently by failing to ensure Exhibit 11 stayed out of jury deliberations given the lack of legal support for such a position.

## CONCLUSION

¶34　The jury instructions were sufficient and correctly articulated the appropriate mens rea requirement for accomplice liability. Further, Trial Counsel waived any argument for a mistrial by inviting the alleged errors, and in any event he did not render ineffective assistance in failing to object to Exhibit 11 being received into evidence or sent to the jury room during deliberations.

———————